204 N.J. Super. 514 (1985)
499 A.2d 526
ROBERT McQUITTY, PLAINTIFF-APPELLANT,
v.
GENERAL DYNAMICS CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 10, 1985.
Decided September 30, 1985.
*515 Before Judges PRESSLER, BILDER and GRUCCIO.
*516 Thomas J. Giblin argued the cause for appellant.
Carmine A. Iannaccone argued the cause for respondent (Stryker, Tams & Dill, attorneys; Mr. Iannaccone and Kenneth T. Lopatka (of the Illinois bar), on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
This is an interlocutory appeal on leave granted from the dismissal of that claim in a wrongful discharge suit alleging breach of contract. The principal issue is whether the operative facts alleged by plaintiff and largely uncontested permit a finding that plaintiff had a contractual right to job security  i.e., the right to be fired only for just cause.
Plaintiff Robert McQuitty went to work for defendant General Dynamics Corporation at its Avenel plant in October 1976. Throughout his employment he was a member of Local 1035 of the UAW, the collective bargaining agent for the hourly paid employees of plaintiff's classification at that facility. At the time of his employment and through October 3, 1980 collective bargaining agreements existed between General Dynamics and the union which provided, among other things, for job security.[1] However, when the then existing contract expired on October 3, 1980, the parties were unable to agree on a new agreement, the union called a strike and its members, including plaintiff, stayed away from work.
*517 When the strike was about 13 weeks old, the union offered to return to work without condition. The offer was made by a telegram which read as follows:
THE EMPLOYEES OF LOCAL 1035 UAW MAKE AN UNCONDITIONAL OFFER TO RETURN TO WORK AT THE GENERAL DYNAMICS CORPORATION, 150 AVENEL STREET, AVENEL NEW JERSEY EFFECTIVE IMMEDIATELY JANUARY 11, 1981. THE ENTIRE BARGAINING UNIT WHICH IS REPRESENTED BY LOCAL 1035 MAKES THIS UNCONDITIONAL OFFER TO RETURN TO WORK EFFECTIVE JANUARY 11, 1981 AND IS READY AND EXPECTS TO RETURN TO THE POSITIONS WHICH THEY OCCUPIED AND HELD PRIOR TO THE EXERCISE OF THEIR RIGHTS UNDER SECTION 7 AND SECTION 13 OF THE NATIONAL LABOR RELATIONS ACT.
The offer was accepted by a return telegram which read as follows:
WE ARE IN RECEIPT OF YOUR TELEGRAM DATED JANUARY 12, 1981. OF COURSE, THE COMPANY CONTINUES TO RECOGNIZE YOU AS THE COLLECTIVE BARGAINING REPRESENTATIVE FOR IT'S [sic] EMPLOYEES. THE COMPANY INTENDS TO RETURN TO WORK QUALIFIED FORMER STRIKERS AS PRODUCTION REQUIREMENTS DICTATE. THE RETURN TO WORK WILL BE IN ACCORDANCE WITH SENIORITY AS DEFINED IN OUR NOW EXPIRED CONTRACT. DUE TO PRODUCTION REQUIREMENTS, ALL PERSONS RETURNING TO WORK WILL BE EXPECTED TO DEVOTE THEIR EFFORTS TO THE PRODUCTION NEEDS OF THE COMPANY. THE COMPANY WILL CONTINUE TO RECOGNIZE, AS APPROPRIATE, GRIEVANCES TO BE PROCESSED UNDER THE GRIEVANCE PROCEDURE ESTABLISHED UNDER THE EXPIRED CONTRACT. IN THIS CONNECTION, THE COMPANY WILL STRICKLY [sic] ADHERE TO THE PROVISION OF ARTICLE XI, SECTION 5, OF THE EXPIRED AGREEMENT. YOUR COOPERATION IN THIS REGARD WILL BE VERY MUCH APPRECIATED. SPECIFICALLY THE UNION DEMANDS THAT IT'S [sic] OFFICERS AND OTHER REPRESENTATIVES BE GRANTED PREFERENTIAL SENIORITY WILL BE HONORED IN ACCORDANCE WITH THIS TELEGRAM. OUR CONCERNS WITH RESPECT TO THESE PROVISIONS WILL BE DISCUSSED WITH YOU ON THURSDAY AT OUR REGULAR NEGOTIATING MEETING.
WE ALSO REMIND YOU THAT THE FORMER CONTRACT HAS EXPIRED AND THAT TERMS AND CONDITIONS OF EMPLOYMENT ARE NOW CONTROLLED BY PROVISIONS OF THE NATIONAL LABOR RELATIONS ACT.
*518 Plaintiff returned to work on January 13, 1981. On February 4, 1982 he claimed to have sustained a work-related injury and stayed away from work until March 1st when he contends his doctor approved of his return. His employment continued until his discharge on April 14, 1982. Throughout the 1981-82 period the union members worked without a new collective bargaining agreement.
Plaintiff instituted this action for wrongful discharge, alleging in a first count that his discharge breached a "written contract negotiated by the UAW ... or ... an implied common law contract of employment." In a second count plaintiff alleged a wrongful termination in retaliation for claiming workers' compensation benefits.
On motion of defendant Judge Rumana dismissed the first count, finding there was "no implied contract of employment under common law" or "existing express or written contract." On appeal plaintiff contends the findings were erroneous and that he should "have the opportunity to present evidence relating to the terms of the written contract of employment between plaintiff and defendant." He also contends that the trial judge failed to take into account an implied covenant of good faith and fair dealing which inhered in the contract under which plaintiff worked and, finally, that defendant by its long-standing practice of discharging only for just cause, a policy upon which plaintiff relied, is estopped from repudiating that policy.
While there is considerable disagreement as to the facts respecting the cause of plaintiff's discharge and the merits of plaintiff's claim of unjust termination, the facts with respect to the existence or nonexistence of a contract of employment are not in dispute. It is uncontested and uncontestable that no collective bargaining agreement existed at the time of plaintiff's discharge. It is similarly beyond argument that whatever rights he had to job security must arise from the telegraphic exchange which led to the resumption of defendant's operations. In the absence of an agreement to the contrary, his employment was merely at will. See Woolley v. Hoffmann-La-Roche, *519 Inc., 99 N.J. 284, 293 (1985). Defendant's telegram, in reality a counteroffer accepted by the employees' return to work, made clear that the sole provision of the expired contract it would recognize was the grievance procedure established therein "as appropriate." Apart from this concession to orderly resolution of work disputes, it unequivocally took the position that the terms and conditions of employment were to be controlled by applicable law.
Plaintiff's attempt to imply a continuation of the job security provisions of the expired contract finds no support in defendant's telegram. Nor does it find support in logic. As our Supreme Court noted in Woolley, job security is one of the most important objectives of employees. Id. at 300. It would be unrealistic to construe defendant's telegram as offering job security during ongoing labor negotiations while the employees worked without a union contract. Indeed, defendant's counteroffer did not even promise re-employment. It did no more than state that when and if former strikers were recalled, "as production requirements dictate", they would be selected on the basis of seniority as defined in the expired contract. Plaintiff's attempt to create a contract from the conditions of employment contained in the payroll notice he received when he was hired in 1976 is frivolous. The notice advised him of the requirement that he join the union. Until it expired, his employment was governed by the collective bargaining agreement. Thereafter it was governed by the terms of the company's 1981 telegram.
Nor is there any merit to plaintiff's contention that he had job security by virtue of an implied contract of employment. He argues that his rehiring and continued employment after the strike evidenced such an implied contract. As already noted, plaintiff's employment was clearly pursuant to the company's 1981 telegram and at-will.
Plaintiff contends an implied promise that he would be discharged only for cause can be found on the basis of the principles enunciated in Woolley v. Hoffmann-LaRoche, Inc., supra. His reliance on Woolley is misplaced. Woolley recognized *520 that employees can obtain contractual rights under unilaterally adopted and promulgated employment manuals just as they do under negotiated collective bargaining agreements. Published employment policies when circulated generally to employees amount to an offer which an employee accepts by performance. Woolley is not, as the parties contend, "an exception to the at-will doctrine", see Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 71-73 (1980), but, rather, a recognition of basic contract principles concerning acceptance of unilateral contracts. It has no application to the instant case.
Plaintiff's remaining contentions are clearly without merit. R. 2:11-3(e)(1)(E). Since plaintiff was working without a contract as an at-will employee, his argument that every contract imposes a duty of good faith and fair dealing is irrelevant. One cannot read additional terms into a non-existent contract. Defendant had an absolute right to terminate plaintiff without cause. The past practice plaintiff relies on to support his claim of promissory estoppel (not raised below) is defendant's performance under the expired contract  duties no longer required of it.
The matter was principally argued below on state law grounds and was considered by the trial judge on that basis. We agree with his determination. However, we note that plaintiff's claim of wrongful discharge under a labor contract is governed by section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a). Although state courts have concurrent jurisdiction, see. Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 507-514, 82 S.Ct. 519, 522-26, 7 L.Ed.2d 483 (1962), the claim alleging violation of a provision of a labor contract must be brought under section 301 and resolved by reference to federal law. See Allis-Chalmers Corp. v. Lueck, ___ U.S. ___, 105 S.Ct. 1904, 1910-1911, 85 L.Ed.2d 206 (1985); Teamsters v. Lucas Flour Co., 369 U.S. 95, 102-104, 82 S.Ct. 571, 576-77, 7 L.Ed.2d 593 (1962). Plaintiff's failure to assert a claim under section 301 and to assert instead a claim grounded on state law required dismissal. Further, even had it been *521 brought under section 301, plaintiff's claim must still fail. Although not a collectively bargained contract, the agreement created by the exchange of telegrams was a labor contract within the meaning of section 301. See Retail Clerks v. Lion Dry Goods, Inc., 369 U.S. 17, 25-28, 82 S.Ct. 541, 546-48, 7 L.Ed.2d 503 (1962). Under federal law, absent an agreement to the contrary, defendant was not subject to a just cause standard in discharging employees. See Local Union No. 2812 v. Missoula White Pine Sash Co., 734 F.2d 1384, 1385, 1387 (9 Cir.1984), cert. den. ___ U.S. ___, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985); Smith v. Kerrville Bus Co., 709 F.2d 914, 916 (5 Cir.1983); Broniman v. Great Atlantic and Pacific Tea Co., 353 F.2d 559, 561 (6 Cir.1965), cert. den. 384 U.S. 907, 86 S.Ct. 1343, 16 L.Ed.2d 360 (1966). As already noted, no such agreement existed. Moreover, plaintiff's claim was barred by a failure to exhaust the available grievance procedures, Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965). In any event, a section 301 claim was time-barred. See DelCostello v. Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), placing a six-month limit on the institution of section 301 claims.
Affirmed.
NOTES
[1] Article VII of the 1977-1980 contract, entitled "Dismissal for Cause", provided:

1. The Employer shall have the right to suspend or dismiss employees for just and proper cause. Such a dismissal shall be known as discharge.
2. The Employer shall notify the Local Union of all contemplated discharges and the Local Union shall have the right to question the justification for the discharge and to meet with the Employer for a review of the reason for the impending discharge. If there is no agreement between the Employer and Local Union as to the justice of the discharge, the employee may nevertheless be discharged, but the Local Union may raise the question of the discharge as a grievance.