238 N.J. Super. 430 (1990)
570 A.2d 12
ROBERT NOYE, PLAINTIFF-RESPONDENT/CROSS-APPELLANT,
v.
HOFFMANN-LA ROCHE INC., DEFENDANT-APPELLANT/RESPONDENT ON CROSS-APPEAL, AND JAMES CHAMBERS, DEFENDANT AND RESPONDENT ON CROSS-APPEAL.
Superior Court of New Jersey, Appellate Division.
Argued November 28, 1989.
Decided February 5, 1990.
*431 Before Judges BILDER, ASHBEY and ARNOLD M. STEIN.
John A. Ridley argued the cause for appellant and respondents on the cross-appeal (Crummy, Del Deo, Dolan, Griffinger and Vecchione, attorneys; John A. Ridley and Kerry M. Parker, of counsel; John A. Ridley, Richard S. Zackin and Kerry M. Parker, on the brief).
Mark J. Malone argued the cause for respondent and cross-appellant Robert Noye (Stier, Anderson & Malone, attorneys; Mark J. Malone, of counsel; Mark J. Malone, Marsha Wenk and James F. Villere, Jr., on the brief).
The opinion of the court was delivered by BILDER, J.A.D.
This is a suit for wrongful discharge. The essential question on appeal is whether tort damages can be recovered for an employer's breach of an implied covenant of good faith contained in an employment contract.
Plaintiff Robert Noye was employed by defendant Hoffmann-La Roche, Inc. as a food services manager. In February 1983, after more than 14 years service, he was terminated. There was no written agreement; plaintiff's rights arose from a company manual entitled "Employee Policies & Procedures." See Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284, 297, 491 A.2d 1257 (1985).
The parties strongly contest the circumstances of the termination. Defendant contends it resulted from allegations of sexual harassment which were discussed with plaintiff without denial. Plaintiff contends he was terminated without reason or an opportunity to meet any charges  in violation of defendant's disciplinary policies. He admitted a relationship existed with a subordinate female employee but denied any harassment. The jury accepted the plaintiff's version. Following a six-week trial the jury found defendant had breached its contract, both by *432 terminating plaintiff without good cause and failing to follow its own procedures for disciplinary discharge. Although defendant argues at some length that these findings should be set aside, the issues are moot because the jury also found that the plaintiff suffered no damage from the breach of contract.[1] Plaintiff does not contest this finding on appeal.[2] Moreover, we are satisfied from an examination of the record that there was sufficient evidence to support the jury verdict and that the trial judge's appraisal at the motion for a new trial was appropriate. See Dolson v. Anastasia, 55 N.J. 2, 6-7, 258 A.2d 706 (1969).

I.
In its deliberations, in answer to a special interrogatory, the jury also found that defendant breached an implied covenant of good faith and fair dealing. It is undoubted that a Woolley contract, like any other contract, contains an implied covenant of good faith and fair dealing. See Bak-A-Lum Corp. v. Alcoa Building Prod., 69 N.J. 123, 129-130, 351 A.2d 349 (1976). The Woolley contract is no more than the ordinary result of an acceptance by plaintiff, by continuing to work, of the terms of employment offered by defendant's handbook. See McQuitty v. General Dynamics Corp., 204 N.J. Super. 514, 519-520, 499 A.2d 526 (App.Div. 1985). Obligations of good faith and fair dealing inhere in the arrangement.
*433 Defendant does not contest this principle but contends that the finding was not supported by the evidence, was flawed by a refusal to instruct the jury that the covenant was not breached if defendant acted reasonably in good faith, and was improperly used as a basis for the imposition of tort damages. Because we are satisfied tort damages do not lie for the breach of contract, it is not necessary to examine all of defendant's contentions. We note, however, that a lack of good faith is implicit in a violation of a covenant of good faith and fair dealing. A finding that defendant reasonably believed the plaintiff had sexually harassed his female subordinate would necessarily bar a finding that the covenant had been violated. Defendant's good faith was not dependent upon an ultimate jury finding as to whether or not the harassment existed.
As we have already noted, the critical element in this appeal is the application of tort damages to this breach of contract. Allowance of such recovery would be an extension of the principle that a discharge is wrongful and tortious when it is motivated by antisocial considerations. Thus, a tort action for wrongful discharge has been recognized, even in the absence of any contract, when the discharge was caused by the employee's opposition to the development of a drug which she believed contained unacceptable levels of saccharin. See Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 62-63, 417 A.2d 505 (1980). Although a cause of action lay in contract, the employee had a right to maintain an action in tort "based on the duty of [the] employer not to discharge an employee who refused to perform an act that is a violation of a clear mandate of public policy." Id. at 72, 417 A.2d 505. It was not the breach of contract with the employee that gave rise to the tort but the underlying motivation of the employer which involved antisocial conduct detrimental to society in general. The tort lay not in the breach of contract but in the violation of valuable social norms  denominated by the court as clear mandates of public policy. See Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 191-192, 536 A.2d 237 (1988); also discussion Schwartz v. *434 Leasametric, Inc., 224 N.J. Super. 21, 28-31, 539 A.2d 744 (App.Div. 1988).
The principles underlying the enforcement of a Woolley contract are quite different. See Schwartz v. Leasametric, Inc., supra at 31, 539 A.2d 744. Unlike Ortho, it is not an exception to the doctrine governing employment at-will, but is a recognition of long established contract principles that an offer may be accepted by performance. See Schwartz v. Leasametric, Inc., supra. In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing. See McQuitty v. General Dynamics Corp., supra 204 N.J. Super. at 520, 499 A.2d 526; Brunner v. Abex Corp., 661 F. Supp. 1351, 1356 (D.N.J. 1986). Thus, the tort recovery referred to in Ortho, supra 84 N.J. at 72, 417 A.2d 505, arises not from the breach of contract but from the violation of public policy. As previously noted, an Ortho tort claim would lie even in the absence of the employer manual. See Velantzas v. Colgate-Palmolive Co., supra 109 N.J. at 191-192, 536 A.2d 237 (firing in retaliation for seeking information relevant to employment discrimination); Lally v. Copygraphics, 85 N.J. 668, 670, 428 A.2d 1317 (1981) (firing in retaliation for filing workers' compensation claim); Lepore v. National Tool and Mfg. Co., 224 N.J. Super. 463, 468-474, 540 A.2d 1296 (App.Div. 1988), aff'd 115 N.J. 226, 557 A.2d 1371 (1989) (firing in retaliation for reporting work place safety violations to OSHA); Kalman v. Grand Union Co., 183 N.J. Super. 153, 159, 443 A.2d 728 (App.Div. 1982) (firing in retaliation for refusal to violate rules and ethical practices regulating practice of pharmacy);[3]cf. Schwartz v. Leasametric, Inc., supra 224 N.J. Super. at 30, 539 A.2d 744 (tort damages do not lie where employee is fired to *435 avoid paying him commissions).[4]
A nationwide examination of the question shows a split of authority. Some states have accepted the view that an implied covenant of good faith and fair dealing exists in employment contracts, but have refused to permit tort damages. See Arco Alaska, Inc. v. Akers, 753 P.2d 1150 (Alaska 1988); Wagenseller v. Scottsdale Memorial Hospital, 147 Ariz. 370, 710 P.2d 1025 (1985); Foley v. Interactive Data Corp., 47 Cal.3d 654, 254 Cal. Rptr. 211, 765 P.2d 373 (1988); Metcalf v. Intermountain Gas Co., 116 Idaho 622, 778 P.2d 744 (1989); Martin v. Federal Life Ins. Co., 109 Ill. App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1982); Maddaloni v. Western Mass. Bus Lines, Inc., 386 Mass. 877, 438 N.E.2d 351 (1982); Wild v. Rarig, 302 Minn. 419, 234 N.W.2d 775 (1975), cert. den. 424 U.S. 902, 96 S.Ct. 1093, 47 L.Ed.2d 307 (1976); Murphy v. American Home Products Corp., 58 N.Y.2d 293, 448 N.E.2d 86, 89-91, 461 N.Y.S.2d 232 (1983); Berube v. Fashion Centre Ltd., 771 P.2d 1033 (Utah 1989). Others have totally rejected any application of an implied covenant in an employment contract. See Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 479 A.2d 781 (1984); Parnar v. Americana Hotels, Inc., 65 Haw. 370, 652 P.2d 625, 629 (1982); Fletcher v. Wesley Medical Center, 585 F. Supp. 1260, 1263 (D.Kan. 1984) (applying Kansas law); also Morriss v. Coleman Co., Inc., 241 Kan. 501, 738 P.2d 841 (1987); Hillesland v. Federal Land Bank Association, 407 N.W.2d 206, 214 (N.D. 1987); Satterfield v. Lockheed Missiles & Space Co., Inc., 617 F. Supp. 1359, 1363-1364 (D.S.C. 1985); Thompson v. St. Regis Paper Co., 102 Wash.2d 219, 685 P.2d 1081, 1086 (1984); Brockmeyer v. Dun & Bradstreet, 113 Wis.2d 561, 335 N.W.2d 834, 838 (1983). A minority of the states have extended tort liability to encompass a breach of the implied covenants. See Prout v. Sears Roebuck and Co., 772 P.2d 288 (Mont. 1988); K Mart Corp. v. Ponsock, 103 Nev. 39, *436 732 P.2d 1364 (1987). The arguments pro and con are parsed in some detail by the majority and dissenting opinions in Foley. See also Note, Tort Remedies for Breach of Contract: The Expansion of Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing in the Commercial Realm, 86 Colum.L.Rev. 377 (1986); Note, "Contort": Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing in Noninsurance, Commercial Contracts  Its Existence and Desirability, 60 Notre Dame L.Rev. 510 (1985).
It is useful to note that those courts that have treated this breach of contract as a tort have relied on the now generally recognized rule holding insurance companies liable to their insureds for the consequential losses resulting from the carrier's failure to deal in good faith. See, e.g., Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 492-493, 323 A.2d 495 (1974); also Note, Defining Public Policy Torts in At-Will Dismissals, 34 Stan.L.Rev 153, 161-167 (1981). The analogy is ill-taken. The rule in insurance cases reflect, indeed depend upon, the fiduciary nature of the relationship.
In our view, the underlying problem in the line of cases relied on by plaintiff lies in the decisions' uncritical incorporation of the insurance model into the employment context, without careful consideration of the fundamental policies underlying the development of tort and contract law in general or of significant differences between the insurer/insured and employer/employee relationships.
[Foley v. Interactive Data Corp., 47 Cal.3d 654, 689, 254 Cal. Rptr. 211, 231-232, 765 P.2d 373, 393 (1988)]
We conclude that tort damages do not lie for breach of an implied covenant of good faith and fair dealing found in an employment contract. Our courts have provided an adequate remedy for employer conduct that violates public policy. See, Note, Tort Remedies for Breach of Contract, supra at 397. We are unpersuaded that there is a need to depart from the ordinary rules of contract law applied in other cases. See Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 579-580, 489 A.2d 660 (1985). Nor do we see a benefit from doing so. The principles of Hadley v. Baxendale, 9 Ex. 341, 156 Eng. Rep. 145 (1854), to which we adhere, see Donovan *437 v. Bachstadt, 91 N.J. 434, 444, 453 A.2d 160 (1982), have proven their worth as they withstood the test of time. It is sufficient that plaintiff be compensated for the expectations which he anticipated under the contract. If a breach of the terms of an employment contract is to be converted into a tort claim for personal injury, it should be done by the Supreme Court. See Coyle v. Englander's, 199 N.J. Super. 212, 219-220, 488 A.2d 1083 (App.Div. 1985). That Court has not been reluctant to expand tort remedies when appropriate. See Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72, 417 A.2d 505 (1980).
It might also be argued that if a need exists for an expansion of employees' rights, it should be done by our legislature, which has never been reluctant to protect workers and is better equipped to study the matter and consider its broad implications. See Franklin v. Dept. of Human Serv., 225 N.J. Super. 504, 530, 543 A.2d 56 (App.Div. 1988) (concurring opinion), aff'd 111 N.J. 1, 543 A.2d 1 (1988); Foley v. Interactive Data Corp., supra 254 Cal. Rptr. at 235, 765 P.2d at 397; Murphy v. American Home Products Corp. supra 58 N.Y.2d at 301-302, 448 N.E.2d at 89-90, 461 N.Y.S.2d at 235-236.
In any event, our Supreme Court has made it clear that, while certain breaches of the employer's duty may give rise to a tort claim, such breaches are not contract breaches.
... [P]laintiff argues that Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72 [417 A.2d 505] (1980), is authority for the proposition that an at-will employee who has been terminated in violation of a clear mandate of public policy may maintain an action in tort or contract.... The Court there observed that such an action could be viewed as based on contract if "predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy," or as a tort if based on the breach of "an employer's duty." Ibid. [Shaner v. Horizon Bancorp., 116 N.J. 433, 452, 561 A.2d 1130 (1989), emphasis added]

II.
The jury found that defendant employer was negligent in failing to supervise plaintiff's supervisor, the man who *438 initially reported and investigated the charges of harassment. It is sufficient to note that such negligence did no more than cause the breach of contract for which defendant was liable. It does not form the basis for an independent tort.[5]See Brunner v. Abex Corp., supra at 1357-1358; also New Mea Const. Corp. v. Harper, 203 N.J. Super. 486, 494, 497 A.2d 534 (App. Div. 1985). Moreover, we are satisfied the evidence did not support the finding of negligent supervision. The trial judge charged the jury that plaintiff claimed defendant was liable for negligently supervising and controlling the action of plaintiff's superior, Chambers, the man who reported and investigated the harassment charges. The evidence permitted a finding that Chambers did not follow company procedures, but there was nothing more than that conclusion to evince negligence on defendant's part in supervising Chambers. Improper or inadequate performance on Chambers' part does not, without more, prove negligent supervision on his employer's part.

III.
The contentions in plaintiff's cross-appeal are clearly without merit. R. 2:11-3(e)(1)(A) and (E). Plaintiff did not make out a case for punitive damages. See Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 369-370, 544 A.2d 857 (1988). Plaintiff's proofs showed, at most, negligence in the investigation which led to a wrongful discharge in violation of his contractual rights. Plaintiff's reliance on the errors in the charge as to intentional infliction of emotional distress is misplaced. The errors favored plaintiff. The instructions permitted a verdict for plaintiff upon findings of less than all the required elements. The errors were not capable of causing an unjust result *439 to plaintiff. Id. at 366-367, 544 A.2d 857; R. 2:10-2. Nor would the proofs have permitted such findings.
Reversed and remanded for entry of judgment for defendant.
ARNOLD M. STEIN, J.A.D., concurring.
I agree that plaintiff is not entitled to recover tort damages.[1] I distance myself from the unnecessary holding that tort damages are never recoverable by an employee for the employer's breach of the covenant of good faith and fair dealing implicit in an employment contract. There is no evidence in the record from which a jury could conclude that Hoffman-La Roche acted in bad faith in discharging plaintiff.
The majority opinion correctly states
[a] finding that defendant reasonably believed the plaintiff had sexually harassed his female subordinate would necessarily bar a finding that the covenant [of good faith and fair dealing] had been violated. Defendant's good faith was not dependent upon an ultimate jury finding as to whether or not the harassment existed. [At 433, 570 A.2d at 13].
The majority opinion properly concludes
[p]laintiff's proofs showed, at most, negligence in the investigation which led to a wrongful discharge in violation of his contractual rights. [At 438, 570 A.2d at 16].
Such conduct is not bad faith, and cannot give rise to tort damages.
This case mandates the exercise of judicial restraint. Courts do not resolve novel questions unless absolutely necessary to the disposition of the litigation. See Ahto v. Weaver, 39 N.J. *440 418, 428, 189 A.2d 27 (1963). There is no reason to use this case as a vehicle for establishing precedent in the sensitive area of employer-employee relationships. The facts presented do not support the cause of action in tort asserted by plaintiff.
Plaintiff, a fourteen-year employee, was the director of food services at Hoffman-La Roche. A.F. and R.V., his subordinates, gave notice that they were leaving the company, supposedly because R.V. had an opportunity to open his own restaurant and would shortly be joined in this venture by A.F.A.F. and R.V. had a romantic relationship. They eventually married.
At her exit interview, A.F. recounted a series of incidents of sexual harassment by plaintiff. The interviewer promptly notified James Chambers, defendant's director of corporate services, who was also an assistant vice president. Chambers immediately arranged a meeting with A.F.
A.F. told Chambers about forced luncheons and dinners with plaintiff on the pretext of business, plaintiff's offers to pay for an apartment for her, and his proposal of marriage. She also told Chambers about an incident where, after putting her in charge of a celebration at the company's Belvidere facility, plaintiff required her to have dinner with him and to stay overnight in the Belvidere area. When A.F. refused, plaintiff assigned the celebration to someone else, claiming that he changed his mind because he wanted someone with more experience to run the event. R.V. had earlier complained to Chambers that he had been harassed by plaintiff at work because plaintiff was jealous of his relationship with A.F.
Chambers immediately met with plaintiff. He testified that plaintiff admitted some of this conduct but denied that any of his actions amounted to sexual harassment.
According to Chambers, he next met with Irwin Lerner, defendant's president and chief executive officer, and Harold Boardman, the company's associate general counsel. He reported the details of his conversations with A.F. and plaintiff. *441 Lerner considered plaintiff's conduct highly improper. Boardman felt that plaintiff's behavior constituted sexual harassment and sufficient grounds for discharge.
Chambers testified that he again met that day with plaintiff and obtained his resignation, effective immediately. Plaintiff received four months severance pay plus his management incentive bonus of approximately $6,200.
Plaintiff claimed that he was never confronted with any specific allegations made by A.F. Instead, plaintiff testified, Chambers called him in and told him that he was going to be fired. Even accepting as true plaintiff's version of the events, Chambers was not acting in bad faith. He discharged plaintiff because he was convinced that plaintiff had engaged in sexual harassment. Plaintiff testified:
Q When you walked into that other office where Mr. Chambers was, what was the first thing you remember him saying?
A He said sit down. I'm going to fire you. He says I just [got] off the phone with [R.V.]. I asked him if he would come back if you weren't here? And he said no.
Q What was your reaction?
A I was stunned.
Q Did he give you reasons?
A He said  he said that you've had problems with people in the past. You're losing two good people. And there's garbage in the personnel department.
....
Q At some point was there a mention by Mr. Chambers of a lawsuit?
A Yes, at one point he said [A.F.] could file suit.
According to defendant's employee policies and procedures manual, necessary disciplinary measures were generally to be taken in progressive steps: oral warnings, written warnings, suspension and discharge. Discharge would result where management has concluded that "there is no longer any reasonable hope that the employee can or will change his behavior, or where the offense is of a sufficiently serious nature."
Plaintiff's conduct was considered by Chambers, Lerner and Boardman to be of sufficiently serious nature to warrant discharge as a first and final penalty.
*442 The majority opinion does not define "good faith and fair dealing," a covenant said to be implied in every contract. [At 432, 570 A.2d at 13]. This is understandable. Concepts such as good faith and fair dealing are chameleonlike in character, necessarily assuming the colorings of the surroundings in which they find themselves.
In a commercial setting, the Uniform Commercial Code defines good faith as "honesty in fact in the conduct or transaction concerned." N.J.S.A. 12A:1-201(19). That definition is as soft in the center as the phrase which it attempts to define. Case law defines the good faith required of a public employee acting in the execution or enforcement of any law under the New Jersey Tort Claims Act, N.J.S.A. 59:3-3:
honesty of purpose and integrity of conduct without knowledge, either actual or sufficient to demand inquiry, that the conduct is wrong. [Marley v. Palmyra Bor., 193 N.J. Super. 271, 294, 473 A.2d 554 (Law Div. 1983), cited with approval in Morey v. Palmer, 232 N.J. Super. 144, 154, 556 A.2d 811 (App.Div. 1989) and Wood v. City of Linden, 218 N.J. Super. 11, 17, 526 A.2d 1093 (App.Div. 1987)].
I offer a definition appropriate to the employer-employee relationship: an action for breach of the implied covenant of good faith and fair dealing will lie where the employer, without an honest belief that good cause for discharge in fact exists, attempts to deprive the employee of the benefit of the employment agreement. See opinion of Justice Kaufman, concurring in part and dissenting in part in Foley v. Interactive Data Corp., 47 Cal.3d 654, 722, 254 Cal. Rptr. 211, 255, 765 P.2d 373, 417 (1989).
The evidence does not support a reasonable conclusion that defendant's employees or officers were attempting to discharge plaintiff for the purpose of depriving him of the benefits of his employment agreement. Plaintiff was fired because his employer believed that as a supervisor he engaged in sexual harassment of a subordinate employee.
The jury found that Hoffman-La Roche breached the contractual rights afforded plaintiff under the company personnel manual. The jury also specifically found that plaintiff suffered *443 no money damages from the contract breach. He is barred from recovery for tort damages because his employer did not commit the tortious conduct claimed by plaintiff, bad faith and unfair dealing.
Tort damages are rarely available for acts arising from breach of contract. See Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 369-370, 544 A.2d 857 (1988); Sandler v. Lawn-A-Mat Chem. & Equip. Corp., 141 N.J. Super. 437, 448, 358 A.2d 805 (App.Div. 1976), certif. den. 71 N.J. 503, 366 A.2d 658 (1976). Certain wrongful discharge cases may belong in that rare category. In Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 417 A.2d 505 (1980), our Supreme Court stated: "An employee who is wrongfully discharged may maintain a cause of action in contract or tort or both." [Id. at 72, 417 A.2d 505].
My reading of this sentence may be too simplistic, perhaps even wrenched from context. I nevertheless see no reason for an intermediate appellate court to attempt to distinguish this explicit language [At 433-434, 570 A.2d at 13-14] in a case where no tort has been committed by the employer.
There is much to be said for and against the awarding of tort damages for the employer's breach of the implied covenant of good faith and fair dealing. See the extensive discussions in the majority and concurring-dissenting opinions in Foley v. Interactive Data Corp., supra, 47 Cal.3d at 682-700, 254 Cal. Rptr. at 227-239, 765 P.2d at 389-401 (Lucas, C.J., for the majority); 47 Cal.3d at 701-715, 254 Cal. Rptr. at 240-250, 765 P.2d at 402-412 (Broussard, J., dissenting in part); 47 Cal.3d at 715-723, 254 Cal. Rptr. at 250-256, 765 P.2d at 412-418 (Kaufman, J., dissenting in part); 47 Cal.3d at 723-724, 254 Cal. Rptr. at 256-257, 765 P.2d at 418 (Mosk, J., dissenting). Whatever should be said on this matter in this jurisdiction should await the arrival of the appropriate case.
Consider the plight of the plaintiff in K Mart Corp. v. Ponsock, 103 Nev. 39, 732 P.2d 1364 (1987). Ponsock, fifty-three years old and a contract-tenured employee, had worked *444 for K Mart for nine and one-half years as a forklift operator. He was earning $9.40 per hour and was approximately six months away from 100% vesting of his retirement benefits, to be paid in full by his employer. He was fired for applying gray primer spray paint to the battery cover of his forklift. The jury found that K Mart acted in bad faith in discharging plaintiff for the express purpose of depriving him of retirement benefits, and awarded compensatory damages of $993,120 and $50,000 in punitive damages. The compensatory damage award included an $11,000 loss incurred by plaintiff when he was forced to sell his home after being dismissed, an item of damages properly claimable only in tort, and not available as damages for breach of contract. The Nevada Supreme Court affirmed, holding that defendant's discharge of plaintiff for the purpose of depriving him of pension benefits was a breach of the implied covenant of good faith and fair dealing. 103 Nev. at 47-53, 732 P.2d at 1369-1373. I am not sure that my colleagues and I would have been content to let this plaintiff recover the obviously inadequate damages available as a contract remedy, given the conduct of this employer.
In Schwartz v. Leasametric, Inc., 224 N.J. Super. 21, 30, 539 A.2d 744 (App.Div. 1988), we affirmed in part the entry of summary judgment granted in favor of defendant, and held that no tort action lies against defendant-employer for firing plaintiff to avoid paying him commissions. That ruling, in which I joined, may be too broad. There was no specific allegation that there was a breach of an implied covenant of good faith. Moreover, the resolution of this novel question might better have awaited the development of a more complete record generated by a plenary hearing. Jackson v. Muhlenberg Hospital, 53 N.J. 138, 142, 249 A.2d 65 (1969); Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 193, 536 A.2d 237 (1988).
I cannot express my views on judicial restraint any better than my colleague, who once observed in a similar context:

*445 This limitation on the exercise of our power arises not only from ... time-honored traditions of restraint ... but from a practical understanding of our own limitations and the need to retain our own credibility.... [Bilder, J.A.D., concurring in Franklin v. Dept. of Human Serv., 225 N.J. Super. 504, 530 [543 A.2d 56] (App.Div. 1988), aff'd 111 N.J. 1 [543 A.2d 1] (1988).
NOTES
[1] In response to the question "what sum or sums of money would fairly and reasonably compensate plaintiff Noye for contract damages, that is, income loss?", the jury said "zero."
[2] Although plaintiff appealed from the "zero" award and in a footnote in his brief indicates he would like a new trial on economic loss in the event of reversal as to the tort damages, he has not argued the matter in his brief and is therefore deemed to have abandoned it. See Matter of Bloomingdale Conval. Ctr., 233 N.J. Super. 46, 48 n. 1, 558 A.2d 19 (App.Div. 1989); Pressler, Current N.J. Court Rules, Comment to R. 2:6-2 (1989).
[3] A firing to deprive an employee of a retirement benefit or a pension, such as is referred to in the concurring opinion, is another example of a violation of a public policy, one that has received legislative recognition. See Employees Retirement Income Security Act, 29 U.S.C.A. § 1001 et seq.
[4] To the extent Giudice v. Drew Chemical Corp., 210 N.J. Super. 32, 509 A.2d 200 (App.Div. 1986) suggests to the contrary, at 39, it is clearly dicta.
[5] If there were a viable negligence claim, it might well have been barred by our Workers' Compensation Act. See Cremen v. Harrah's Marina Hotel Casino, 680 F. Supp. 150, 155-156 (D.N.J. 1988).
[1] The jury awarded plaintiff $750,000 in compensatory damages and no punitive damages. The jury concluded that defendant committed tortious conduct. In answer to special interrogatories the jury found that defendant breached its contractual obligation to follow its employment manual procedures for disciplinary discharge, but found that no income loss resulted to plaintiff from this breach. The jury also found that defendant breached the implied covenant of good faith and fair dealing and awarded plaintiff $750,000 for damages "over and above" those awarded for breach of contract. At trial plaintiff offered evidence of depression and emotional distress and medical and hospital bills which he claimed resulted from his wrongful discharge.