**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1440-23

JAMES PARK,

     Plaintiff-Appellant,

v.

LISA A. CLEMMONS, as
Executrix of the ESTATE OF
PATRICIA ANN HALLIGAN,
TERRIE O'CONNOR REALTORS,
PATRICIA MCKENNA,
and DON LEHACH, d/b/a
ASSURANCE INSPECTION
SERVICE,

     Defendants-Respondents,

and

ESTATE OF PATRICIA ANN
HALLIGAN and MALEEN CREPP,

     Defendants.

_____

Argued November 13, 2025 – Decided December 3, 2025

Before Judges Smith, Berdote Byrne, and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-5217-20.

Matthew Jeon argued the cause for appellant as the court-appointed trustee of Kimm Law Firm[1] (Michael S. Kimm, on the brief).

Quinn M. McCusker argued the cause for respondent Lisa Clemmons (Fowler Hirtzel McNulty & Spaulding, LLP, attorneys; Quinn M. McCusker, on the brief).

Thomas D. Flinn argued the cause for respondent Don Lehach (Garrity, Graham, Murphy, Garofalo & Flinn, PC, attorneys; Thomas D. Flinn, on the brief).

O'Connor Kimball, LLP, attorneys for respondents Terrie O'Connor Realtors and Patricia McKenna (Glen D. Kimball and Michael S. Soule, on the brief).

PER CURIAM

Plaintiff appeals the trial court's grant of summary judgment to defendants[2] Lisa Clemmons, as the executrix of the estate of Patricia Ann Halligan, and Don Lehach, a home inspector. He also appeals the denial of his cross-motion to suppress Clemmons' answer for failure to appear at a deposition.

---

[1] This matter was originally scheduled for oral argument on September 11, 2025, but was adjourned when we learned Mr. Kimm became incapacitated in May 2025. Mr. Jeon, Esq. was appointed by the Supreme Court as the trustee of Kimm Law Firm and argued the appeal.

[2] We were informed at oral argument that defendants Terrie O'Connor Realtors and Patricia McKenna settled with plaintiff.

A-1440-23

Plaintiff's complaint alleges Consumer Fraud Act (CFA) violations, common-law fraud and misrepresentation, breach of contract, and breach of the covenant of good faith and fair dealing against defendants. The claims are based on Clemmons' alleged misrepresentations that the property plaintiff purchased was connected to the municipal sewer system and the omission of the presence of a septic tank on the property.

We affirm the trial court's grant of summary judgment because plaintiff cannot demonstrate a genuine issue of material fact as to whether defendants' representations were false, or whether defendants knew or should have known a septic tank was on the property. Additionally, we affirm the trial court's order denying the cross-motion because the court did not abuse its discretion.

## I.

Plaintiff, James Park, entered into a real estate purchase agreement on July 24, 2014, with Lisa A. Clemmons, the executrix of the Estate of Patricia Ann Halligan, for property located in River Vale, New Jersey (the Property). Clemmons sold the Property with the assistance of Terrie O'Connor Realtors and real estate agent Patricia McKenna (collectively, the Realtors). Before the closing date of September 5, 2014, plaintiff entered into an agreement with Don Lehach from Assurance Home Inspections (Lehach) to inspect the Property.

3

The real estate listing indicated the Property was connected to the town's municipal sewer system. The seller's Property Condition Disclosure Statement, signed by Clemmons, the Realtors, plaintiff, and plaintiff's real estate agent: (1) the Property had a "public sewer" system; and (2) they were unaware of any septic tank on the Property. Separately, Lehach's inspection report stated the home "appeared to be connected to the municipal sewer system." Despite this, plaintiff alleges he discovered a septic tank underneath the Property when he was having his kitchen remodeled in 2020, six years after he purchased the property. He incurred expenses removing it. Plaintiff also alleges the Property was not connected to the municipal sewer system.

Plaintiff filed his complaint on September 4, 2020, alleging CFA violations, breach of contract and the covenant of good faith and fair dealing against all defendants, and common-law fraud and misrepresentation against Clemmons and the Realtors.

Plaintiff sent an initial notice of deposition on March 24, 2022, indicating his intention to depose all defendants on May 17, 2022. On April 6, 2022, Lehach notified plaintiff he was unavailable on that date. On May 3, 2022, Clemmons and the Realtors also informed plaintiff of their unavailability and requested to adjourn their respective depositions. On July 15, 2022, plaintiff

4

offered three new dates for defendants' depositions: August 1, 2022; August 2, 2022; and August 3, 2022. Between July 19, 2022, and August 3, 2022, defendants individually responded they were not available on any of the suggested dates, but agreed they could each appear on August 12, 2022, for their respective depositions. Plaintiff did not respond until August 11, 2022, when he agreed to depose defendants the next day. However, defendants were no longer available as plaintiff had not responded to their offered date nor sent an updated notice of deposition.

Thereafter, the parties entered into a consent agreement on August 17, 2022, to complete all discovery by January 18, 2023. Despite this, plaintiff never sent another notice of deposition nor made any further requests for defendants to be deposed. In the interim, defendants deposed plaintiff's agent on November 2, 2022, plaintiff on January 12, 2023, and plaintiff's wife on January 18, 2023.

Plaintiff also moved for waiver of expert testimony, seeking a declaration from the trial court that the issues to be decided were within the "common knowledge" of jurors, which the trial court denied.

After the close of discovery, Clemmons and the Realtors filed motions for summary judgment. Plaintiff filed opposition and cross-motions to suppress

5

Clemmons' and the Realtors' answers for failure to attend their depositions. The court granted defendants' motions and denied plaintiff's cross-motions. Lehach then filed a motion for summary judgment. Plaintiff filed opposition. The court granted Lehach's motion. On December 7, 2023, the court entered default judgment against the Estate of Patricia Halligan in the amount of $22,800. This appeal followed.

II.

We review a trial court's order on summary judgment de novo and apply the same standard used by the trial court. Boyle v. Huff, 257 N.J. 468, 477 (2024). "In ruling on a summary judgment motion, a court does not 'weigh the evidence and determine the truth of the matter'; it only 'determine[s] whether there is a genuine issue for trial.'" C.V. ex rel. C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305-06 (2023) (alteration in original) (quoting Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021)). "To decide whether a genuine issue of material fact exists, the trial court must draw[] all legitimate inferences from the facts in favor of the non-moving party." Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 549 (2022) (quoting Friedman v. Martinez, 242 N.J. 449, 472 (2020)) (internal quotation marks omitted). If the "competent evidential materials presented, when viewed in the light most favorable to the non-moving

6

party, permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party," the movant is not entitled to summary judgment. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also Globe Motor Co., 225 N.J. at 480. A court should grant summary judgment "when the evidence is so one-sided that one party must prevail as a matter of law." Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 257 (2018) (quoting Brill, 142 N.J. at 540) (internal quotation marks omitted).

On appeal, plaintiff claims: (1) summary judgment was improper because genuine issues of material fact exist as to Clemmons' representations that the Property was connected to a municipal sewer and Lehach's negligence in inspecting the property; (2) the trial court erred in finding an expert opinion necessary; and (3) the trial court erred in refusing to suppress Clemmons' answer for failing to attend her deposition.

A.    Plaintiff's Claims against Clemmons

Consumers who suffer an ascertainable loss of money or property because of unlawful commercial practices may be entitled to a judgment and statutory damages pursuant to the CFA. Robey v. SPARC Group LLC, 256 N.J. 541, 548 (2024); Heyert v. Taddese, 431 N.J. Super. 388, 411 (App. Div. 2013). The CFA does "not apply, however, to non-professional sellers of real estate, i.e. to

the homeowner who sells a house in the normal course of events." Byrne v. Weichert Realtors, 290 N.J. Super. 126, 134 (App. Div. 1996); see also Zaman v. Felton, 219 N.J. 199, 223 (2014). Because Clemmons is a non-professional seller, she is not liable pursuant to the CFA.

Therefore, we consider only the common-law fraud claim against Clemmons. A plaintiff alleging common-law fraud must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Allstate N.J. Ins. Co. v. Lajara, 222 N.J. 129, 147 (2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005)).

Plaintiff argues Clemmons is subject to liability for common-law fraud because her representation that the Property was connected to a municipal sewer was false and due to her failure to inform plaintiff of a septic system on the Property. Even viewing the evidence in a light most favorable to plaintiff, as we must, we agree with the trial court that no genuine issues of material fact exist as plaintiff presents no evidence the Property was not connected to a municipal sewer, and no evidence Clemmons was aware of the existence of a septic tank on the Property.

A-1440-23

When addressing whether a genuine issue of material fact exists, we restrict our analysis to the specific allegations plaintiff makes: that Clemmons falsely maintained the Property was connected to a municipal sewer and she knowingly omitted the presence of a septic tank.

Regarding her representation the Property was connected to a municipal sewer, summary judgment would be improper if a genuine issue of material fact exists as to whether the Subject Property was not connected to a municipal sewer. See R. 4:46-2(c). As to this inquiry, the record shows:

- The Property was approved to be connected to a municipal sewer in 1974;

- Clemmons admitted that while living at the Property from age four to twenty-six, she was unaware of any payment to maintain a septic system or a sewer charge, which was subsumed in the municipal tax bill; and

- Plaintiff's approvals and invoices for his contractor's work in 2020 showed he applied to "replace" the municipal sewer line connected to the Property, rather than "install" a municipal sewer line for the first time.

Plaintiff failed to produce evidence to show the Property was not, in fact, connected to the municipal sewer system. Plaintiff's election not to retain an expert to prove this fact for his prima facie case, after the trial court determined expert testimony was necessary, is fatal to his misrepresentation claim. In fact, all plaintiff's proffered evidence supports Clemmons' position that the Property was indeed connected to a municipal sewer system. When presented with the 1974 sewer connection permit at his deposition, plaintiff was asked, "Is it your contention that no sewer line was installed in 1974?", to which he responded, "I have no idea." Regarding sewer charges, plaintiff submitted a certification to the court contending, upon investigating the matter with River Vale's tax collector's office as to "whether the annual tax bill includes any line-item for "sewer tax," the office informed him "the sewer tax is subsumed within the general property tax bill." And plaintiff testified at his deposition he has never received a sewer bill, even after removing the septic tank. Finally, when asked at his deposition "why the application for the [maintenance] permit was to replace the sewer line from the foundation to curb, rather than install a new sewer line from foundation to curb and make the connection," plaintiff responded, "I have no idea." Plaintiff testified he never paid a connection fee to connect the Property to the municipal sewer for the first time and did not get a

10

permit for initial setup, unlike the 1974 permit for initial connection presented by defendants.

Plaintiff's only proof the Property may not have been connected to the municipal sewer system is the mere fact that a septic tank was also present on the Property. This evidence, at best, indicates the Property was at one point connected to a septic tank or it may have utilized both a septic tank and municipal sewer system for its waste needs, but it does not raise a genuine issue of fact suggesting Clemmons' statement that the Property was connected to a municipal sewer was false.

Regarding Clemmons' alleged omission of the presence of a septic tank on the Property, the trial court correctly found plaintiff presented no evidence Clemmons had any knowledge or belief a septic tank existed. When asked what facts he had to prove Clemmons knowingly provided false information about the Property's septic tank, plaintiff responded, "I don't know . . . . I'm thinking maybe two years ago I had some sort of evidence. Now I don't know how I came up with this answer." When asked whether he believed Clemmons had any reason not to rely on the inspector's report or the 1974 permit approval when making her representations, plaintiff responded, "No."

A-1440-23

Moreover, during oral argument on Clemmons' motion for summary judgment, plaintiff's counsel admitted, "We have nothing to indicate actual knowledge" of a septic tank. Instead, plaintiff's counsel made a bald assertion that Clemmons should have known the Property was connected to a septic tank because she had lived there since she was a child, although it is undisputed plaintiff had no knowledge of the presence of the septic tank for the first six years he lived there.[3]

Because no genuine issue of material fact exists to support plaintiff's claim that Clemmons falsely represented the Property was connected to a municipal sewer system or she knowingly omitted the presence of a septic tank on the Property, we affirm the trial court's grant of summary judgment dismissing plaintiff's common-law fraud claims.

B. Plaintiff's Claims for Breach of Contract and Covenant of Good Faith and Fair Dealing[4]

---

[3] Such a "conclusory and self-serving assertion[]" is insufficient to survive a motion for summary judgment. See Puder v. Buechel, 183 N.J. 428, 440-41 (2005).

[4] Plaintiff's merit brief does not address his contractual claims, and instead exclusively focuses on his CFA and common-law fraud claims. Regardless, we address plaintiff's contractual claims as the trial court's order dismissed all plaintiff's claims, including the contract claims.

A-1440-23

A plaintiff alleging breach of contract has the burden of proving four elements:

> [F]irst, that "[t]he parties entered into a contract containing certain terms"; second, that "plaintiff[] did what the contract required [him] to do"; third, that defendant[s] did not do what the contract required [them] to do[,]" defined as a "breach of contract"; and fourth, that "defendant[s'] breach, or failure to do what the contract required, caused a loss to the plaintiff[]."
>
> [Globe Motor Co., 225 N.J. at 483 (second, fifth sixth, seventh and eighth alterations in original) (quoting Model Jury Charges (Civil), 4.10A, "The Contract Claim—Generally" (May 1998)).]

In addition to its express terms, "[e]very contract in New Jersey contains an implied covenant of good faith and fair dealing," Cumberland Farms, Inc. v. N.J. Dep't of Env't Prot., 447 N.J. Super. 423, 443 (App. Div. 2016) (quoting Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 420 (1997)), which is "as effective [as] components of [the] agreement as those covenants that are express." Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001). "Under this 'implied covenant . . . "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."'" Cumberland Farms, 447 N.J. Super. at 443 (omission in original) (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)). "However, it is well established . . . that '[i]n the absence of a contract, there can be no

breach of an implied covenant of good faith and fair dealing.'" Ibid. (alteration in original) (quoting Noye v. Hoffmann-La Roche Inc., 238 N.J. Super. 430, 434 (App. Div. 1990)). With respect to both Clemmons and Lehach, although plaintiff had a different contract with each party, neither breached the express terms of their respective agreements with plaintiff or "destroy[ed] or injur[ed] the right of [plaintiff] to receive the fruits of the contract" to breach the implied covenant of good faith and fair dealing. See Ibid. (quoting Palisades Props., 44 N.J. at 130).

Regarding Clemmons, she and plaintiff entered into a contract for sale of the Property. In his complaint, plaintiff alleges the contract stated the Property was "connected to a municipal sewer system" and Clemmons "failed to perform and thereby breached the agreement and duty of good faith and fair dealing[] by [her] knowing misrepresentations." Plaintiff's claim alleging his agreement with Clemmons represented the Property was connected to a municipal sewer is belied by the record. The agreement states, in pertinent part, only that:

- Clemmons "represents that all . . . plumbing . . . now work[s] and shall be in proper working order at the time of Closing";

- That "ALL REPRESENTATIONS AND/OR STATEMENTS MADE BY [Clemmons] IN THIS SECTION SHALL NOT SURVIVE THE CLOSING OF TITLE";

- Clemmons "DOES NOT GUARANTEE the condition of the premises after the deed and affidavit of title have been delivered to [plaintiff]"; and

- The Property "is being sold in an 'AS IS' condition and that this Agreement is entered into based upon the knowledge of the [plaintiff] as to the value of the land and whatever buildings are upon the Property, and not on any representation made by [Clemmons]," and plaintiff therefore "is granted the right to have the dwelling and all other aspects of the Property inspected and evaluated by qualified inspectors."

We note several threshold issues before substantively addressing plaintiff's contract claims against Lehach.

Plaintiff's brief states "[t]he central issue [regarding Lehach] . . . is whether he was negligent" in inspecting the Property before plaintiff's purchase. Plaintiff then provides an analysis of the four negligence elements and how they apply to Lehach to survive summary judgment. Additionally, plaintiff's

15                                                                      A-1440-23

argument against the need for expert testimony revolves around an inquiry as to Lehach's negligence. Despite these arguments, plaintiff's complaint alleges only violations of the CFA, common-law fraud, breach of contract, and breach of the covenant of good faith. Plaintiff does not plead a negligence claim against Lehach. Because plaintiff makes a negligence argument for the first time on appeal and did not assert such cause of action in his complaint, we disregard any negligence argument against Lehach made on appeal. N. Haledon Fire Co. No. 1 v. Borough of N. Haledon, 425 N.J. Super. 615, 631 (App. Div. 2012) ("An issue not raised below will not be considered for the first time on appeal."). Indeed, at the trial level, plaintiff's counsel stated "the facts . . . and the case don't deal with whether or not [defendants] missed something due to their negligence."

Furthermore, we note the trial court dismissed plaintiff's complaint as to Lehach solely because the claims were barred by N.J.S.A. 45:8-76.1, which requires "[a]n action for an error or omission in the performance of a home inspection contract with respect to a home inspector . . . be commenced within four years of the date of the home inspection." Because plaintiff's inspection agreement with Lehach is dated July 31, 2014, and plaintiff filed his complaint on September 3, 2020, we agree with the trial court that plaintiff's claims against

Lehach are time barred by N.J.S.A. 45:8-76.1. However, for the sake of completeness, we address the substantive aspects of plaintiff's claims against Lehach, the dismissal of all also warrants our affirmance.

Regarding Lehach, his contract with plaintiff provided he would "perform a visual inspection and prepare a written report of the apparent condition of the readily accessible installed systems . . . . Latent and concealed defects and deficiencies are excluded from the inspection." Plaintiff admitted at his deposition there was no physical indication of a septic tank on the Property (e.g., a manhole cover in the yard, vents, cleanout hatches, etc.), which might have suggested the presence of a septic system. Rather, the lack of presence of these indicators rendered Lehach's conclusion, upon visual inspection, that the Property "appeared to be connected to the municipal sewer system" within the parameters of the parties' agreed-upon terms of inspection.

C.    Denial of Plaintiff's Cross-motion

Finally, we briefly address plaintiff's cross-motion seeking to suppress Clemmons' answer "for failure to attend depositions."[5] We review the trial court's denial of the motion for abuse of discretion. See Kolczycki v. City of E.

---

[5] Plaintiff did not file a cross-motion seeking similar sanctions against Lehach, contending in his brief that Lehach "was produced for depositions." However, the record does not indicate any defendant, including Lehach, was deposed.

A-1440-23

Orange, 317 N.J. Super. 505, 512 (App. Div. 1999).  Accordingly, we will not reverse the trial court's decision to decline imposing sanctions unless the court's decision "is made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis."  Kornbleuth v. Westover, 241 N.J. 289, 300-01 (2020) (alterations in original) (quoting U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)).

Rule 4:23-4 provides if a party fails to appear at a deposition "after being served with a proper notice, the court in which the action is pending on motion may," pursuant to Rule 4:23-2(b)(3), issue an order striking the pleadings of the non-appearing party.  This case's procedural history underscores the propriety of the trial court's decision to deny plaintiff's cross-motion.  Plaintiff never provided notice to Clemmons as required by Rule 4:23-4, other than the initial March 24, 2022 notice.  Upon learning she was unavailable on August 11 to be deposed on August 12, 2022, the parties entered into a consent order allowing plaintiff until January 18, 2023, to give notice and take defendants' depositions. Plaintiff failed to take advantage of this opportunity without explanation, although three of his own witnesses were deposed by defendants during that timeframe.  He failed to give notice of the depositions, and did not move to compel discovery pursuant to Rule 4:23-1.  He also failed to move to extend the

discovery deadline, see R. 4:24-1(c), and only moved to strike Clemmons' answer after discovery had ended and in opposition to her summary judgment motion.[6]

For these reasons, we affirm the trial court's decision denying plaintiff's cross-motion to suppress Clemmons' answer.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

---

[6] While a court-appointed trustee for plaintiff's counsel's firm argued the appeal, there is no indication in the record that plaintiff's counsel became incapacitated during the eight hundred days of discovery in this case. On the contrary, he successfully filed and argued opposition to summary judgment motions, filed cross-motions, and filed this appeal in a timely manner. Plaintiff's merits brief does not reference counsel's incapacity as grounds for extraordinary circumstances warranting the reopening of discovery.

A-1440-23