Walter T. PETERS, Jr.

v.

**DELAWARE RIVER PORT AUTHOR-
ITY OF PENNSYLVANIA AND
NEW JERSEY.**

No. 91–CV–6814.

United States District Court,
E.D. Pennsylvania.

March 6, 1992.

Thomas J. Duffy, Philadelphia, Pa., for plaintiff.

Mark J. Schwemler, Elliott, Bray & Riley, Blue Bell, Pa., for defendant.

## MEMORANDUM

BARTLE, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983.[1]  Plaintiff Wal-

---

**1.** 42 U.S.C. § 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

ter T. Peters, Jr. ("Peters") alleges that the defendant Delaware River Port Authority of Pennsylvania and New Jersey ("DRPA") has infringed his constitutional rights of free speech and association, by failing to reappoint him as its Secretary solely because he is a member of the New Jersey Republican Party.

Now before this Court is the motion of defendant, DRPA, to Dismiss Plaintiff's Complaint, or in the Alternative for Summary Judgment, pursuant to Rules 12(b)(6) and 56, respectively, of the Federal Rules of Civil Procedure. In addition, the DRPA requests the Court to strike plaintiff's claim for punitive damages and to order plaintiff to file a more definite statement of his state law based claims.

Rule 12(b) of the Federal Rules of Civil Procedure states in pertinent part:

> ... the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted ... If, on a motion asserting the defense numbered (6) ... matters outside the pleading are presented to ... the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....

When making a determination under Rule 12(b)(6) the Court cannot consider matters outside the pleadings. Since the Court has been presented with and has considered matters beyond the pleadings, defendant's motion to dismiss will be treated as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

Rule 56(c) provides the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.Rule Civ.P. 56(c). *See also, Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is well settled law that in deciding motions for summary judgment, the question to consider when determining if there is a "genuine issue of material fact" is whether there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Weldon v. Kraft, Inc.,* 896 F.2d 793, 797 (3d Cir.1990). The evidence must be viewed in the light most favorable to the non-moving party. *Weldon* at 797.

Peters became an officer of the DRPA when he was appointed Secretary by its Board of Commissioners on October 20, 1989. At the end of his term as Secretary on January 20, 1991, the Board of Commissioners did not reappoint him to that position. As stated above, Peters alleges that he was not reappointed solely because he was affiliated with the New Jersey Republican Party. He claims that the Commissioners wanted the position to be occupied instead by an individual affiliated with the New Jersey Democratic Party. The person who succeeded Peters as Secretary is a Democrat.

Defendant DRPA first argues that summary judgment should be granted in its favor, under Rule 56 of the Federal Rules of Civil Procedure, because it is an "arm or instrumentality" of both the Commonwealth of Pennsylvania and the State of New Jersey. If so, DRPA contends it is protected from suit in the federal courts by the Eleventh Amendment of the Constitution and is not subject to suit as a "person" under 42 U.S.C. § 1983.

The Eleventh Amendment of the Constitution[2] bars suits in federal court against a

---

**2.** The Eleventh Amendment provides:
  The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

The Supreme Court has interpreted the Amendment to protect an unconsenting state from "suit in federal court by its own citizens as well as those of another state." *Pennhurst State*

state unless the state has waived its immunity or unless Congress exercises its power to override that immunity. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). No waiver argument is made here. Moreover, Congress did not disturb the states' Eleventh Amendment immunity in passing 42 U.S.C. § 1983. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Accordingly, a state and any political entity which qualifies as an "arm of the state," are not "persons" within the meaning of § 1983. *Will*, 109 S.Ct. at 2308–11.

The DRPA was formed by a Compact, approved by Congress, between the Commonwealth of Pennsylvania and the State of New Jersey. The DRPA was created, among other things, to operate and maintain the bridge owned jointly by the two states across the Delaware River between the Cities of Philadelphia and Camden. Under the Compact DRPA has authority to construct and maintain facilities for the transportation of passengers, to improve and develop the Port District for port purposes, and to promote commerce on the Delaware River. It may also establish, maintain and operate a rapid transit system between certain points in New Jersey and Pennsylvania. Compact, Art. I.

According to the Compact, the DRPA is financially self-sufficient. It is permitted to raise revenues by means of bonds, and collect tolls and other use charges to satisfy its obligations. Compact, Art. IV(j). Furthermore, the Compact specifically provides that the DRPA has no power to pledge the credit or create any debt of either the Commonwealth of Pennsylvania or the State of New Jersey. Hence, the debts of the DRPA are not the debts of either state. Compact, Art. VII.

In order to determine whether the DRPA is an arm or instrumentality of Pennsylvania and New Jersey, and therefore, immune from suit under 42 U.S.C. § 1983, the Court of Appeals of the Third Circuit has set out guidelines which require the consideration and analysis of three key factors: (1) the source of DRPA's funding to determine whether Pennsylvania and New Jersey have immunized themselves from responsibility for DRPA's debts; (2) the status of DRPA under state law, that is, the treatment of the agency under state law; and (3) the degree of autonomy from state control which DRPA enjoys. *Bolden v. Southeastern Pennsylvania Transportation Authority*, 953 F.2d 807 (3d Cir.1991); *Fitchik v. New Jersey Transit Rail Operation, Inc.*, 873 F.2d 655 (3d Cir.1989). In both these cases, the Court of Appeals held that the entities in issue were not an arm or instrumentality of the state for purposes of the Eleventh Amendment.

The first and most important factor is the source of DRPA funding, that is, "whether any judgment [against the DRPA] would be paid from the state treasury." *Bolden* at 818; *Fitchik* at 659. According to the Compact, DRPA is financially self-sustaining, with the authority to raise revenues by means of bonds and toll collections. Compact, Art. IV(j).[3] Significantly, in *Fitchik*, the Court of Appeals found that the New Jersey Transit Rail Operations, Inc. ("NJTRO") was not an arm or instrumentality of New Jersey even though the state provided 33% of the NJTRO's revenues. In *Bolden* the Court of Appeals arrived at the same conclusion concerning the Southeastern Pennsylvania Transportation Authority ("SEPTA"), even though Pennsylvania provides 27% of its revenues. Here, DRPA is financially self-sustaining and is not dependent on any state for funding. Additionally, in *Bolden* and *Fitchik*, the Court of Appeals for the Third Circuit also relied on the fact that the states in question were under no obligation to pay the debts of NJTRO or SEPTA or to reimburse those entities for judgments

*School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974).

**3.** Defendant DRPA seeks to diminish this factor by pointing out that DRPA was initially funded

by contributions from the States. That factor becomes irrelevant when, as here, the entity becomes financially self-sustaining after the initial state contributions.

against them. So also, in the case at bar, DRPA is financially independent of either state, as the Compact which created DRPA specifically provides that the debts of DRPA are not the debts of either Pennsylvania or New Jersey. Compact, Art. VII. Consequently, the funding factor, which the Court of Appeals has held to be the most important of the considerations, weighs very heavily in support of the conclusion that DRPA is not an arm or instrumentality of either state.

The second factor to consider, in determining whether DRPA is an arm or instrumentality of the states and therefore not a "person" under § 1983, is the status which DRPA has under state law. *Bolden* at 820. In *Yancoskie v. Delaware River Port Authority*, 478 Pa. 396, 387 A.2d 41 (1978), a personal injury suit, the Pennsylvania Supreme Court held that DRPA was not an arm of the Commonwealth and, therefore, was not entitled to sovereign immunity. The court stated:

> We believe that an analysis of the legislative acts defining the purposes and powers of the Delaware River Port Authority, together with the relevant judicial decisions, requires a conclusion that ... the Authority is not 'an integral part of the Commonwealth,' ... and that it is therefore subject to suit, as are 'political subdivisions or governmental entities other than the Commonwealth itself,' (Citations omitted).

*Yancoskie*, 387 A.2d at 42.

Similarly, the New Jersey Supreme Court has held, in a personal injury suit, that the DRPA does not enjoy immunity under the New Jersey Tort Claims Act. *Bell v. Bell*, 83 N.J. 417, 416 A.2d 829 (1980).

Like SEPTA in *Bolden* and NJTRO in *Fitchik*, the DRPA possesses "attributes not characteristic of an arm of the state." *Bolden*, at 820. The DRPA, for example, has the power to enter into contracts and to make purchases without state approval. Compact, Art. IV(f)–(h). *See also, Bolden* at 820. On the other hand, like SEPTA in *Bolden* and NJTRO in *Fitchik*, the DRPA possesses some attributes under state law

which are normally associated with the state. These include the exemption from state property taxation, Compact, Art. XI, and the power of eminent domain, Compact, Art. IV(k). *See, Bolden* at 820. However, on balance, DRPA's status under state law weighs heavily in support of the conclusion that DRPA is not a state arm or instrumentality.

The third factor to consider in deciding whether DRPA is a "person" under § 1983 is DRPA's autonomy, that is, the lack of control which Pennsylvania and New Jersey can exercise over the DRPA. The chief fact in the present case which seems to point to a measure of state control is the manner in which the sixteen members of the Board of Commissioners of the DRPA are selected. Membership is split evenly, with eight members from New Jersey and eight from Pennsylvania. The Governor of New Jersey appoints all that state's members while the Governor of Pennsylvania appoints six of the eight members representing the Commonwealth. The other two Pennsylvania Commissioners are the Auditor General and the State Treasurer who serve ex-officio. The Board of Commissioners, in turn, appoints the officers of the DRPA, one of which is the Secretary, the position held by the plaintiff Peters. In *Bolden* the make-up of the SEPTA board guaranteed slightly more autonomy. Only five out of the fifteen SEPTA board members are appointed by state officials, the rest being appointed by the counties that SEPTA serves. *Bolden* at 820. In *Fitchik*, three out of the seven members were required to be members of New Jersey's executive branch and the New Jersey Governor has veto power over the board's actions. *Fitchik*, at 663.

Other facts support the argument that DRPA is autonomous, such as DRPA's separate corporate existence, its power to enter into contracts, its power to hold property, and its power to set tolls. On balance, however, because of each state's power in appointing DRPA's Board of Commissioners, the autonomy factor weighs "slightly" in favor DRPA being an arm or instrumentality of the states. *Bolden* at 820.

In order to make the final determination whether DRPA is an arm or instrumentality of the Commonwealth of Pennsylvania and the State of New Jersey, we are required to take into account the totality of the three factors discussed above. In this case, funding, the most important factor, weighs heavily against a finding that DRPA is an arm or instrumentality of the states. Of the other two factors, the status under state law weighs heavily against, and the autonomy from state control weighs slightly in favor of a finding that DRPA is an arm or instrumentality of the states. DRPA has less of a nexus with the states in issue than SEPTA had in *Bolden* and NJTRO had in *Fitchik*, where the Court of Appeals found that those entities were not arms of the state. Under the facts here, we must conclude that the DRPA is not an arm or instrumentality of Pennsylvania or New Jersey. Consequently, DRPA is not entitled to rely on the immunity from suit conferred by the Eleventh Amendment and is subject to suit as "person" under 42 U.S.C. § 1983.

Defendant's heavy reliance on the case of *Port Authority Police Benevolent Association, Inc. v. Port Authority of New York and New Jersey*, 819 F.2d 413 (3d Cir.1987), ("*PBA* "), in support of its position that the DRPA is an alter ego of Pennsylvania or New Jersey, is misplaced. The entity involved in *PBA* was the Port Authority of New York and New Jersey ("Authority"). The differences between the Authority and the DRPA are manifest. The Court in *PBA* notes specifically that the Courts of New York and New Jersey have consistently held that the Authority is a state agency performing functions on behalf of the state. *PBA* at 415. In the present case, to the extent that the states have decided the question, they have held to the contrary. *See, Yancoskie*, and *Bell, supra*. In *PBA*, the Court determined that any judgment against the Authority could have some impact upon the state treasuries. Under the controlling statute, if a judgment entered against the Authority depleted its resources, the Authority would be able to go to the state legislatures in order to recoup the amount needed for its operating expenses. *PBA* at 416. In the present case, under the Compact, the debts of the DRPA are not the debts of either Pennsylvania or New Jersey and the DRPA has no power to pledge the credit of either state. Compact, Art. VII. In *PBA*, the actions of the Commissioners of the Authority are subject to veto by the Governor of either state. In the instant case, no such veto power exists. We, therefore, do not believe that the *PBA* case supports defendant's claim in this case that DRPA is an arm or instrumentality of the states.

■ DRPA next argues that it is entitled to summary judgment because plaintiff Peters, as Secretary of DRPA, was a policymaker or a confidential employee and therefore could be replaced solely on the basis of his political affiliation.

The Supreme Court has held that it is a violation of a public employee's civil rights under 42 U.S.C. § 1983, to demote, transfer, fire or not reappoint to a position, such an employee on the basis of his or her political affiliation. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); and *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). However, at the same time, the Supreme Court has recognized certain exceptions to this rule. In order for the hiring authority to govern effectively, an exception has been made for policymaking employees or employees in a position of confidence. These employees may properly be chosen or dismissed because of their political affiliation. *Elrod*, 427 U.S. at 367, 96 S.Ct. at 2686; *Branti*, 445 U.S. at 518, 100 S.Ct. at 1295; *Rutan*, 110 S.Ct. at 2735 n. 5, 2745.

The reasoning behind this exception is that there are situations which arise where an employer has a legitimate interest in employing persons who will loyally implement the policies of a political party and guard confidential information from improper disclosures. *Elrod*, 427 U.S. at 365–68, 96 S.Ct. at 2685–87; *Branti*, 445 U.S. at 518, 100 S.Ct. at 1294; and *Rutan*,

110 S.Ct. at 2735, n. 5. As stated by the Supreme Court in *Branti:*

> In sum, the ultimate inquiry is not whether the label "policymaker" or "confidential" fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved.

*Branti,* 445 U.S. at 518, 100 S.Ct. at 1295.

Therefore, the issue to be determined in this case is whether political affiliation is an appropriate requirement for the effective performance of the office of Secretary of the DRPA. The determination is very fact specific. *Zold v. Township of Mantua,* 935 F.2d 633, 635 (3d Cir.1991). The Court of Appeals for the Third Circuit in *Zold* held that a public employee would not be protected from dismissal due to party affiliation if such differences would "be highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of the office ..." *Zold,* at 635. "The key factor ... [is] not whether the employee was a supervisor or had a great deal of responsibility but whether the employee has 'meaningful input into decision making concerning the nature and scope of a ... program.' " (Citations omitted) *Brown v. Trench,* 787 F.2d 167, 169–70 (3d Cir.1986).

In this case, both Peters and DRPA have supported their positions with affidavits describing the duties and responsibilities necessary for the effective performance as Secretary of the DRPA. Peters states, for example, that while he was Secretary, he was custodian of the records and seal of the DRPA. He coordinated meetings of the Board of Commissioners and its Committees, but had no input into the substance of the agenda of the meetings. He made no decisions as to when the meetings were to be held. He furnished copies of the agenda and minutes of prior meetings upon request. He occasionally attended ceremonial functions. According to Peters, these duties were purely ministerial and in no way depended upon party affiliation for their effective performance.

DRPA, on the other hand, has submitted the affidavit of its General Counsel, which paints a much different picture of the duties and responsibilities of the Secretary. According to that affidavit the Secretary has record-keeping functions which entail more than mere clerical or non-discretionary duties, including developing the agenda for Board of Commissioner and Committee meetings. He acts as an advisor to the President of the DRPA concerning the subject matter of internal and external correspondence. He helps plan improvements and expansion of DRPA facilities, and has direct input into and otherwise participates in all policy-forming discussions. The Secretary's job also includes public relations duties with other agencies. According to DRPA, these duties, among others, make the Secretary of the DRPA a policymaker and a confidential employee in whom party affiliation is necessary for effective performance.

Based on the foregoing, there exist genuine issues of material fact. Consequently, the Motion of defendant DRPA for Summary Judgment with respect to whether Peters held a policymaking or confidential position, will be denied.

Defendant DRPA also seeks to dismiss plaintiff's claim for punitive damages. It is well established that municipalities are not subject to punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 258–267, 101 S.Ct. 2748, 2755–60, 69 L.Ed.2d 616 (1981). The question is whether that rule extends to an entity like the DRPA. This issue was addressed in *Bolden* where the entity involved was the SEPTA. The Court of Appeals stated:

> SEPTA, of course, is not a governmental unit in the traditional sense, but it shares many characteristics with federal, state, and local government agencies.... While SEPTA's ties to state government are not close enough or exclusive enough to persuade us that SEPTA should be regarded as an alter ego of the Commonwealth for Eleventh Amendment purposes, SEPTA's ties to all levels of government taken together are sufficient

to convince us that SEPTA may be analogized to a government entity for purposes of determining whether SEPTA should be liable for punitive damages. Thus, the immunity from punitive damages enjoyed by all levels of government in 1871 weighs in SEPTA's favor here. (Footnote omitted).

*Bolden,* at 830.

The same can be said of the DRPA. Accordingly, the motion of defendant to dismiss plaintiff's claim for punitive damages will be granted.

■ Finally, defendant DRPA has moved, under Rule 12(e) of the Federal Rules of Civil Procedure,[4] for a more definite statement of plaintiff's state law claims. DRPA contends that ¶¶ 3 and 21(a) of the Complaint, the two paragraphs which make reference to state law claims, do not identify the applicable state statutes or state common law principles, upon which plaintiff bases his allegations. While admittedly not a model of specificity, Rule 12(e) provides that a motion for a more definite statement may be granted only if the complaint is "so vague and ambiguous that [the defendant] cannot reasonably be required to frame a responsive pleading." *Blue Line Coal Co., Inc. v. Equibank,* 683 F.Supp. 493, 498 (E.D.Pa.1988). This is not the case here. Defendant's motion under Rule 12(e) will be denied.

---

**4.** Rule 12(e) of the Federal Rules of Civil Procedure states in pertinent part:

   If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and details desired....