Richard KING

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY

Civil A. No. 94–573.

United States District Court,
D. New Jersey.

Nov. 17, 1995.

Amended Order Dec. 29, 1995.

Mandy R. Steele, Barry E. Levine, MANDY R. STEELE, P.C., East Brunswick, NJ for Plaintiff.

Sharon K. McGahee, Hugh H. Welsh, Port Authority of New York and New Jersey, Newark, NJ, for Defendant.

### AMENDED LETTER OPINION
### ORIGINAL ON FILE WITH
### CLERK OF THE COURT

POLITAN, District Judge.

This matter is presently before the Court on the motion of defendant Port Authority of New York and New Jersey ("Port Authority") to dismiss numerous Counts and the claim for punitive damages asserted in the Complaint of plaintiff Richard King pursuant to Fed.R.Civ.P. 12(b)(6), and for lack of subject matter jurisdiction based on the Tort Claims Act. I heard oral argument on October 10, 1995, and reserved decision. For the reasons stated herein, defendant's motion is **GRANTED in part, and DENIED in part.**[1]

### STATEMENT OF FACTS

Plaintiff is an African–American male employed in the Engineering Department of the Construction Division of the Port Authority. Plaintiff was hired in January of 1988 as an electrical inspector for Newark International Airport. Plaintiff asserts that he was awarded a disproportionate merit increase in October of 1988 in retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC"). After a finding of probable cause by the EEOC, on November 21, 1990, plaintiff was given a raise in accordance with a Conciliation Agreement.

In the interim, plaintiff was promoted to a position at LaGuardia International Airport.

**1.** This Opinion supersedes and replaces the Court's previous Opinion dated November 8, 1995.

However, plaintiff asserts that said transfer was a guise to retaliate, harass, and discriminate against him by causing financial, physical, and mental hardship. Plaintiff posits that in retaliation for the EEOC complaint, he was denied an opportunity to apply for a promotion to acting assistant resident engineer.

Furthermore, plaintiff alleges that he was denied a promotion to the position of assistant resident engineer at LaGuardia on the basis of race. Rather, on April 15, 1992, Dan Hartigan, a caucasian male, was promoted to the position. Plaintiff asserts that he was clearly better qualified for the position since he holds a New York State license and has attained a Master's Degree. Plaintiff, however, only notified his supervisor of his Master's Degree in June of 1992. Hartigan was subsequently made permanent assistant resident engineer.

In September of 1992, plaintiff wrote several letters to his supervisor and the executive director regarding the lack of African–American employees in middle and upper management. Plaintiff's supervisor, Jack Erhard, allegedly advised plaintiff that his EEOC complaint would adversely affect his chance of being promoted. In the same month, two more caucasian male employees, allegedly less qualified than plaintiff, were promoted to assistant resident engineer. Again, on November 18, 1992, plaintiff filed a complaint of race discrimination with the EEOC. On March 3, 1993, an African–American male was hired from outside the company to the position of assistant resident engineer.

Plaintiff asserts that he received a low performance rating in September of 1993, in retaliation for his earlier complaints and because of his race. Another finding of probable cause was made by the EEOC. In July and December of 1993, plaintiff was allegedly threatened and told to "watch his back" because his supervisors would be "watching him." Finally, plaintiff states that on December 30, 1993, he again received a disproportionately low merit increase. Subsequently, plaintiff requested an explanation for said salary increase, but received no response.

Plaintiff filed a Complaint in this Court on February 7, 1994, alleging that the Port Authority discriminated against him on the basis of race and in retaliation for his filing complaints with the EEOC. On March 4, 1994, plaintiff was transferred to the Port Authority Trans–Hudson Railroad ("PATH"), which plaintiff alleges was in retaliation for his filing this suit. On March 21, 1994, the First Amended Complaint was filed to include this alleged retaliation.

A Second Amended Complaint was filed on May 13, 1994, to include as evidence of retaliation a confrontation between plaintiff and his supervisor, Ronald Gumann. Subsequently, plaintiff attended numerous meetings with his supervisors in relation to his job performance and work load. During his last performance evaluation, plaintiff stated that he was questioned about his ethnic origin and native language. Thereafter, the Third and present Amended Complaint was filed on October 3, 1995. The instant motion followed.

## DISCUSSION

### I. Standard of Review

■ When a court decides a 12(b)(6) motion, all allegations in the complaint must be taken as true and viewed in the light most favorable to the non-movant. *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 1921 n. 3, 64 L.Ed.2d 572 (1980); *Robb v. City of Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984). When, after viewing the allegations in the complaint in this beneficent light, it appears beyond doubt that no relief could be granted under any set of facts which could prove consistent with the allegations, a court shall dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Zynn v. O'Donnell*, 688 F.2d 940, 941 (3d Cir.1982).

### II. Implied Covenant of Good Faith and Fair Dealing

■ The second Count of plaintiff's Complaint contains the allegation that defendant breached its duty of good faith and fair dealing to plaintiff. The New Jersey Supreme

Court has held that there is an implied covenant of good faith and fair dealing in every contract. *Onderdonk v. Presbyterian Homes of N.J.*, 85 N.J. 171, 182, 425 A.2d 1057 (1981); *Bak–A–Lum v. Alcoa Bldg. Prod.*, 69 N.J. 123, 129–30, 351 A.2d 349 (1976); *Association Group Life, Inc. v. Catholic War Veterans of U.S.*, 61 N.J. 150, 293 A.2d 382 (1972); *Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 130, 207 A.2d 522 (1965). As a corollary to that proposition, the Court commented that it is reasonable to imply that neither party to a contract shall injure the right of the other to receive the fruits of the agreement. *Onderdonk*, 85 N.J. at 182, 425 A.2d 1057 (citations omitted). A cognizable cause of action for breach of the implied duty of good faith and fair dealing in the employment context exists where the employer attempts to deprive the employee of the benefits of the employment agreement without an honest belief that good cause for discharge is in fact present.[2] *See Noye v. Hoffmann–La Roche, Inc.*, 238 N.J.Super. 430, 570 A.2d 12 (App.Div.1990), *certif. denied,* 122 N.J. 146, 147, 584 A.2d 218 (1990); *see also Nolan v. Control Data Corp.*, 243 N.J.Super. 420, 579 A.2d 1252 (App.Div.1990).

■ In the absence of a contract, there is no implied covenant of good faith and fair dealing under New Jersey law. *See Noye*, 238 N.J.Super. at 433, 570 A.2d 12. However, an implied obligation of good faith is applicable to those aspects of the employer-employee relationship which are governed by some contractual terms, even if the employment is characterized as being "at-will." *Nolan*, 243 N.J.Super. at 429, 579 A.2d 1252. The contractual understanding upon which plaintiff bases his claim for breach of the implied covenant of good faith and fair dealing is the *Woolley* contract evidenced by pamphlets and manuals disseminated by defendant. *See Woolley v. Hoffmann–La Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257, *modified,* 101 N.J. 10, 499 A.2d 515 (1985).

■ The basic principle of *Woolley* is that "when an employer of a substantial number of employees circulates a manual that, when fairly read, provides that certain benefits are an incident of the employment (including, especially, job security provisions) the judiciary ... should construe [it] in accordance with the reasonable expectations of the employees." *Id.* at 297–98, 491 A.2d 1257 (citation omitted). The court was careful to note, however, that the contract arising from the manual does not protect the employer against any termination; rather, the implied promise is to safeguard the employee only from *arbitrary* termination. *Id.* at 300, 491 A.2d 1257. In order to proffer a plausible *Woolley* claim, plaintiff is required to bring to the Court's attention some provision or language within the manual or handbook which guarantees that he will not be terminated except for good cause.

■ Plaintiff asserts that the Port Authority's pamphlet entitled *The Port Authority Way: A Guide to Ethical Standards,* another pamphlet entitled *Performance Planning and Review Program,* and a document entitled *Statement of Stanley Bresenoff, Executive Director The Port Authority of New York and New Jersey October 9, 1992* formed part of the purported contract of employment.[3] Even if true, however, policy statements cannot as a matter of law create a contractual obligation and abrogate the employment at-will doctrine. *Tripodi v. Johnson & Johnson,* 877 F.Supp. 233, 238 (D.N.J. 1995). A policy manual and statements of corporate officers must contain more than mere statements of company policy or goals. *Id.* at 239; *Catalane v. Gilian Instrument Corp.,* 271 N.J.Super. 476, 495, 638 A.2d 1341 (App.Div.), *certif. denied,* 136 N.J. 298, 642 A.2d 1006 (1994).

Plaintiff's claim of an implied contractual understanding pursuant to *Woolley* is misplaced. The Port Authority's policy manuals do not address termination, but are mere

---

2. The claim that defendant breached the covenant of good faith and fair dealing is not a tort claim, but is contractual in nature. *See Noye v. Hoffmann–La Roche, Inc.,* 238 N.J.Super. 430, 437, 570 A.2d 12 (App.Div.1990), *certif. denied,* 122 N.J. 146, 147, 584 A.2d 218 (1990).

3. Plaintiff filed this Complaint on February 7, 1994. Therefore, plaintiff may not rely on the manual entitled *Public Interest: The Guide to Port Authority Ethical Standards,* dated July 1994, since it could not be the basis upon which plaintiff asserts the claims in his Complaint.

statements of corporate policy. These broad and general corporate assertions do not change an at-will employment situation into a contract. Because I have found no actionable claim under the *Woolley* doctrine, there is no contract upon which to base a claim for breach of the implied covenant of good faith and fair dealing. Accordingly, Count two of plaintiff's Complaint is hereby **DISMISSED.**

## III. Intentional Infliction of Emotional Distress

In the third and fourth Counts of the Complaint, plaintiff alleges that defendant intentionally inflicted emotional distress upon him. The New Jersey Supreme Court has recognized a cause of action for the intentional infliction of emotional distress. *Buckley v. Trenton Sav. Fund Soc'y,* 111 N.J. 355, 366, 544 A.2d 857 (1988). In order to succeed under such a claim, plaintiff must prove: (1) defendant acted intentionally or recklessly (intending both to do the act and to produce the emotional distress); (2) defendant's conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious and utterly intolerable in a civilized community; (3) defendant's actions were the proximate cause of plaintiff's emotional distress; and (4) the emotional distress suffered by plaintiff was so severe that no reasonable person could be expected to endure it. *Id. See also Restatement (Second) of Torts,* § 46.

The courts have recognized the difficulty of establishing such a claim in an employment related dispute. One court, applying New Jersey law, dismissed the plaintiff's intentional infliction of emotional distress claim, holding:

[W]e do not believe that [New Jersey] courts would extend this tort to cover an employment contract dispute.... To the contrary, application of this tort must be restricted to instances of extreme and outrageous conduct; indeed, the limited scope of the tort tolerates many kinds of unjust, unfair and unkind conduct.

*Cautilli v. GAF Corp.,* 531 F.Supp. 71, 74 (E.D.Pa.1982). Indeed, the Third Circuit has observed:

[T]hat it is extremely rare to find conduct in an employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress.... In the context of a dismissal, it has been noted that 'while loss of employment is unfortunate and unquestionably causes hardship, it is a common event' and cannot provide a basis for recovery for intentional infliction of emotional distress.

*Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988) (citations omitted) (applying Pennsylvania law), *cert. denied,* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990).

In the instant case, plaintiff has simply failed to allege any evidence of extreme and outrageous conduct directed at him by defendant which would rise to the level of an actionable claim. Proof of severe emotional distress is a necessary element to plaintiff's cause of action. *Hume v. Bayer,* 178 N.J.Super. 310, 319, 428 A.2d 966 (Law Div.1981). Moreover, plaintiff has asserted no facts to support a finding that he suffered severe emotional distress. Therefore, Counts three and four of plaintiff's Complaint must be **DISMISSED.**

## IV. New Jersey Law Against Discrimination

In the sixth and final Count of plaintiff's Complaint, plaintiff asserts that defendant discriminated against him in violation of the New Jersey Law Against Discrimination ("LAD"). *See* N.J.S.A. 10:5–1 *et seq.* Defendant moves to dismiss this Count based on the argument that LAD is a unilaterally enacted state law which does not apply to the Port Authority, as a bi-state agency created by Compact.[4]

---

4. The Port Authority was created in 1921 by a Compact between New York and New Jersey, which was consented to by Congress. The goal of the Compact is to develop public transportation, terminal and other facilities of commerce within the Port of New York District. *See* N.J.S.A. 32:1–1.

■ In the Compact, New York and New Jersey explicitly consented to law suits against the Port Authority. N.J.S.A. 32:1–157. In fact, the Port Authority is liable for torts to the same extent as a private corporation. N.J.S.A. 32:1–162. Courts have noted, however, that this waiver of immunity must be strictly construed. *Matthews v. Port of N.Y. Auth.,* 163 N.J.Super. 83, 85, 394 A.2d 172 (Law Div.1978), *aff'd,* 171 N.J.Super. 38, 407 A.2d 1255 (App.Div.1979); *Wood v. Dic/Underhill & Universal Builders Supply Co.,* 136 N.J.Super. 249, 252 345 A.2d 382 (Law Div.) (citing *Rao v. Port of N.Y. Auth.,* 122 F.Supp. 595 (E.D.N.Y.1954), *aff'd,* 222 F.2d 362 (2d Cir.1955)), *aff'd,* 144 N.J.Super. 364, 365 A.2d 723 (App.Div.1975), *certif. denied,* 73 N.J. 65, 372 A.2d 330 (1977). Hence, the applicability of state laws to a bi-state agency is determined by examining the language of the Compact. *See, e.g., Eastern Paralyzed Veterans Ass'n v. Camden,* 111 N.J. 389, 545 A.2d 127 (1988); *Bell v. Bell,* 83 N.J. 417, 416 A.2d 829 (1980); *Delaware River & Bay Auth. v. New Jersey Pub. Employment Relations Comm'n,* 112 N.J.Super. 160, 270 A.2d 704 (App.Div.1970), *aff'd,* 58 N.J. 388, 277 A.2d 880 (1971).

There is no provision in the present Compact which directly addresses which laws of the respective states are applicable to the Port Authority. For obvious practical reasons, the Compact prohibits one state from unilaterally imposing duties on the Port Authority without the concurrence of the sister state. N.J.S.A. 32:1–8.[5] The Compact, however, allows the Port Authority to establish its own employee qualifications. N.J.S.A. 32:1–15. The Court's independent research has uncovered that there is no case in New Jersey which resolves the issue of whether the Port Authority is subject to liability under LAD. Therefore, the Court is guided by analogous decisions relating to other bi-state agencies and cases interpreting New York's Human Rights Law.

■ In a case such as this, when the Court is required to apply state law, the Court is guided by the decisions of the highest court in the state. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *McKenna v. Pacific Rail Serv.,* 32 F.3d 820, 825 (3d Cir.1994). In the absence of a state supreme court decision on point, the Court must examine the appellate court decisions, and predict how the supreme court would decide the issue. *Id.* at 825; *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 661–62 (3d Cir.), *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

The Supreme Court of New Jersey first addressed the applicability of a single state's law to a bi-state agency in *Bell v. Bell,* 83 N.J. 417, 416 A.2d 829 (1980). The court held that the New Jersey Legislature could not unilaterally effect the waiver of sovereign immunity by the Delaware River Port Authority ("DRPA") provided for in the bi-state compact. *Id.* at 424, 416 A.2d 829. The court adopted the rationale of the Appellate Division in *Delaware River & Bay Authority v. New Jersey Public Employment Relations Comm'n* ("DRBA") that to allow one state to regulate the bi-state entity would destroy the purpose of the agency. *Id.* (citing *DRBA, supra,* 112 N.J.Super. at 165–66, 270 A.2d 704).

For the same reason, the court in *Eastern Paralyzed Veterans Ass'n v. Camden* refused to apply New Jersey construction codes and the Law Against Discrimination to DRPA. *See* 111 N.J. at 389, 545 A.2d 127 (citing *Bell,* 83 N.J. at 424, 416 A.2d 829, quoting *DRBA,* 112 N.J.Super. at 165–66, 270 A.2d 704). The court declared that a single state's law may only be applied when the compact itself states that the bi-state entity is subject to single-state jurisdiction. *Id.* at 399, 545 A.2d 127. Furthermore, when the compact states have similar, but not identical laws, the laws only apply to the bi-state agency upon an explicit showing of agreement by both states that the laws are intended to apply to the agency. *Id.* at 402, 545 A.2d 127. To hold otherwise, the court explained, would allow one state to affect the operation of the bi-state agency by forcing upon it additional

---

5. The Compact provides in pertinent part: "The port authority shall have such additional powers and duties as may hereafter be delegated to or imposed upon it from time to time by the action of the legislature of either state *concurred in* by the legislature of the other or by Acts of Congress, as hereinafter provided...." N.J.S.A. 32:1–8 (emphasis added).

duties or responsibilities. *Id.* at 398, 416 A.2d 127.

While the New Jersey Supreme Court has spoken in regard to the applicability of single-state laws to the DRPA compact, it has not analyzed the same question under the Port Authority Compact in question between New York and New Jersey. The Appellate Division, however, has examined this Compact. In *Port Authority Field Supervisors Ass'n v. Port Authority of New York & New Jersey*, the Law Division held that the New Jersey Employer–Employee Relations Act did not apply to the Port Authority. No. L–41434–89, slip op. at 4 (N.J.Law Div. April 12, 1991), *aff'd*, No. 35–424 (N.J.App.Div. May 29, 1992), *certif. denied*, 133 N.J. 428, 627 A.2d 1135 (1992). The court propounded that the bi-state agency could only be bound by identical laws concurrently adopted by the relevant states. *Id.* (citing *DRBA*, 112 N.J.Super. 160, 270 A.2d 704). The Appellate Division affirmed the lower court, but added that single-state legislation may also be applied where the relevant states have similar laws *and* the laws purport to apply to the Port Authority. No. 35–424, slip op. at 2 (citing *Eastern*, 111 N.J. at 402, 545 A.2d 127). The court determined that while New Jersey's Employer–Employee Relations Act and New York's Taylor Act were substantively similar, neither statute purported to apply to the Port Authority. *Id.* Therefore, even in light of the similarity of these laws, the New Jersey labor law could not be applied to the Port Authority.

Plaintiff cites a recent decision of the Appellate Division, *International Union of Operating Engineers v. Delaware River & Bay Authority*, for the proposition that similarity of legislation is sufficient to subject the Port Authority to a single state's laws. *See* No. A–2228–93T1, slip op. at 10 (N.J.App.Div. August 2, 1995). In *International Union*, the court determined that New Jersey's policy of favoring collective negotiations, as reflected in the Employer–Employee Relations Act, could be applied to DRBA if Delaware had similar legislation. The Appellate Division held that "the legislation enacted in each compact state need not be identical in order to find that both have the same policy. Com-

plimentary and parallel legislation of a 'similar' nature will do." *Id.* at 8. Furthermore, the court declared that there was no need for the compact to explicitly state that the policy in question was applicable to the bi-state agency. *Id.*

At first glance this recent case seems to be in direct conflict with the previous decisions cited above. The *International Union* court made a very subtle distinction, however, noting that "plaintiffs [were] not seeking to actually implement either state's regulatory scheme," but were seeking equitable relief based on public policy. *Id.* at 10 (citing *DRBA*, 112 N.J.Super. at 166–65, 270 A.2d 704). The Court finds that this distinction was unnecessary, and merely stated in *International Union* as *dicta.* Rather, the court relied on a provision in the DRBA compact which expressly granted concurrent jurisdiction to the New Jersey and Delaware courts, thereby allowing either state's laws to apply. *Id.* at 6 (citing *Eastern*, 111 N.J. 389, 545 A.2d 127). The court explained that the existence of the jurisdictional provision was the pivotal distinction between its case and *Eastern*. *Id.* Similarly, the Port Authority Compact in question between New York and New Jersey does not contain the concurrent jurisdiction provision.

In light of this analysis, the Court predicts that the New Jersey Supreme Court would apply the *Bell* and *Eastern* rationale to the present Port Authority Compact. Accordingly, I find that LAD may only be applied to the Port Authority if New York has concurrently adopted the same legislation or if the states have similar legislation which purport to apply to the Port Authority. Since neither of these situations is present, LAD may not be applied to the Port Authority.

This past summer, a New York Supreme Court held that the Compact in question prohibited the application of New York's Human Rights Law to the Port Authority. *Bailey v. Port Auth. of N.Y. & N.J.*, No. 40149–92, slip op. at 5 (N.Y.Sup.Ct. May 18, 1994), *aff'd*, —— A.D.2d ——, 627 N.Y.S.2d 921 (App.Div.1995). The *Bailey* court was faced with a very similar factual scenario involving allegations of employment discrimination on the basis of race and handicap. *Id.* at 1–3.

Relying on a distinction between internal and external operations of the Authority, the court opined that to apply the Human Rights Law would "constitute unilateral regulation by one state upon the power vested in the Authority to determine the qualifications of its employees." *Id.* at 4–5. The court buttressed its holding by noting that there was no indication by the New York legislature that it intended to subject the Port Authority to the Human Rights Law. *Id.* at 6.

In the case *sub judice,* plaintiff's claim of employment discrimination is strikingly similar to those of the plaintiff in *Bailey.* Furthermore, New Jersey's LAD is substantively similar to New York's Human Rights Law, which was adopted only one month prior to LAD. Pesin, *Summary, Analysis & Comment "Anti–Discrimination" or "Fair Employment Practices" Legislation of New Jersey,* 68 N.J.L.J. 217, 219 (June 28, 1945); *see also Carney v. Dexter Shoe Co.,* 701 F.Supp. 1093, 1102 (D.N.J.1988); *Goodman v. London Metals Exch., Inc.,* 86 N.J. 19, 35–36, 429 A.2d 341 (1981). Hence, plaintiff's claim under LAD should similarly be dismissed.

■ To hold otherwise would be illogical from both a legal and practical point of view. If plaintiff were allowed to pursue a claim under LAD in this Court, then whether any employee were to obtain relief under state discrimination laws would wholly depend upon the plaintiff's choice of which court he or she chose to sue the Port Authority. Similar to the depecage[6] problem that plagues conflict of law cases, a plaintiff in New Jersey would be permitted to recover, while a similarly situated plaintiff in New York would be barred from recovery. *See Tooker v. Lopez,* 24 N.Y.2d 569, 301 N.Y.S.2d 519, 543, 249 N.E.2d 394, 411 (1969) (Breitel, J., dissenting). The Compact specifically attempts to avoid this discrepancy by providing that duties may not be imposed upon the Port Authority without concurrence by both states. *See* N.J.S.A. 32:1–8.

■ Accordingly, the Court holds that the single law of one state may not be applied to a bi-state entity unless the law of all relevant states are identical or the states explicitly articulate that the law should apply. As such, plaintiff's claim under LAD is **DISMISSED**.[7]

## V. Tort Claims Act

■ Defendant contends that this Court lacks subject matter jurisdiction over the present action because plaintiff failed to comply with the jurisdictional prerequisites prescribed by the New Jersey Tort Claims Act. N.J.S.A. 32:1–163 requires that a suit against the Port Authority be commenced within one year after the date that the cause of action accrues, and that the Port Authority be notified within sixty (60) days prior to the institution of the suit. This statute, "wherein

---

6. Depecage is a theory applied by some courts to resolve choice of law issues. *Broome v. Antlers' Hunting Club,* 595 F.2d 921, 923 n. 5 (3d Cir. 1979). It is defined as "[t]he process whereby different issues in a single case arising out of a single set of facts are decided according to the laws of different states." *Black's Law Dictionary* 436 (6th ed. 1990). Judge Breitel, dissenting in *Tooker v. Lopez,* noted a technical and disastrous problem which results when applying depecage. 24 N.Y.2d 569, 301 N.Y.S.2d 519, 543, 249 N.E.2d 394, 411 (1969); *see also* Harold L. Korn, *The Choice of Law Revolution: A Critique,* 83 Colum.L.Rev. 772, 876 (1983).

In *Tooker,* Marcia Lopez and Susan Silk were passengers in a car driven by Catharina Tooker. *Tooker,* 301 N.Y.S.2d at 519, 249 N.E.2d 394. The three college students were travelling from Michigan State University to Detroit. *Id.* Tooker and Lopez were both New York domiciliaries, *id.,* and Silk was from Michigan. *Id.* at 543, 249 N.E.2d at 411. Lopez and Silk were seriously injured when the automobile was involved in an accident. *Id.* at 519, 249 N.E.2d 394. In the law suit between Tooker and Lopez, the court applied the depecage theory of conflict of laws and found that Lopez could recover under the New York guest statute. *Id.* at 525–26, 249 N.E.2d at 398–399. The dissent noted that by the application of depecage the majority was implying that Silk, the Michigan passenger, would be denied recovery under Michigan law, while her fellow-passenger from New York was allowed to recover under New York law. *Id.* at 543, 249 N.E.2d at 411 (Breitel, J., dissenting). The majority refused to address the issue because it was not necessary for adjudication of the case between Lopez and Tooker. *Id.* at 528, 249 N.E.2d at 400.

7. The Court's conclusion does not leave plaintiff without a remedy for defendant's alleged discrimination. Defendant concedes that plaintiff may still assert discrimination claims under numerous federal laws, including Title VII and 42 U.S.C. § 1983.

sovereign immunity against suit is waived[,] must be strictly construed." *Matthews v. Port of N.Y. Auth.,* 163 N.J.Super. 83, 85, 394 A.2d 172 (Law Div.1978), *aff'd,* 171 N.J.Super. 38, 407 A.2d 1255 (App.Div.1979); *Wood v. Dic/Underhill & Universal Builders Supply Co.,* 136 N.J.Super. 249, 252, 345 A.2d 382 (Law Div.) (citing *Rao v. Port of N.Y. Auth.,* 122 F.Supp. 595 (E.D.N.Y.1954), *aff'd,* 222 F.2d 362 (2d Cir.1955)), *aff'd,* 144 N.J.Super. 364, 365 A.2d 723 (App.Div.1975), *certif. denied,* 73 N.J. 65, 372 A.2d 330 (1977).

In the case at bar, the facts upon which plaintiff bases his Complaint occurred between January 19, 1988 (when he was hired) and December 30, 1993 (when he received a low performance rating). Plaintiff filed this Complaint on February 7, 1994, well within the one year statute of limitations defined by the Tort Claims Act. Furthermore, defendant was provided with sufficient notice that such a cause of action was pending due to plaintiff's numerous complaints filed with the EEOC, as well as letters sent directly to his supervisors and the executive director. Accordingly, defendant's motion to dismiss plaintiff's Complaint for lack of subject matter jurisdiction is **DENIED.**

### VI. Punitive Damages

The Port Authority, as a hybrid entity with substantial connections to government, may not be assessed punitive damages. *Bolden v. Southeastern Pa. Transp. Auth.,* 953 F.2d 807, 830 (3d Cir.1991), *cert. denied,* 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1993), *on remand,* 820 F.Supp. 949 (E.D.Pa. 1993), *aff'd,* 21 F.3d 29 (1994); *Frazier v. Southeastern Pa. Transp. Auth.,* 868 F.Supp. 757, 762 (E.D.Pa.1994); *Peters v. Delaware River Port Authority of Pa. & N.J.,* 785 F.Supp. 517, 522–23 (E.D.Pa.1992). Plaintiff's reliance on *Hess v. Port Authority* is misplaced because the Supreme Court only addressed the applicability of the Eleventh Amendment to the Port Authority, not immunity from punitive damages. *See —* U.S. —, —, 115 S.Ct. 394, 400, 130 L.Ed.2d 245 (1987). Furthermore, plaintiff's request that the Port Authority be treated analogous to Conrail is inappropriate because of the essential difference in which the two entities are characterized. Conrail is not considered a public entity, *Jackson v. Consolidated Rail Corp.,* 223 N.J.Super. 467, 483–84 n. 3, 538 A.2d 1310 (App.Div.1988), whereas the Port Authority has been characterized as a public entity. *See Hess,* — U.S. at — n. 8, 115 S.Ct. at 400 n. 8. Accordingly, plaintiff's demand for punitive damages against defendant is dismissed, and defendant's motion is **GRANTED.**

### CONCLUSION

For the foregoing reasons, plaintiff has failed to establish valid causes of action against defendant under Counts two (2), three (3), four (4), six (6) and for punitive damages. The Court finds that the notice and filing requirements of the Tort Claims Act have been satisfied. Accordingly, the motion of defendant for dismissal of part of plaintiff's Complaint is **GRANTED in part, and DENIED in part.**

An appropriate Order accompanies this Opinion.

### *AMENDED ORDER*

**This matter** having come before the Court on the motion of defendant Port Authority of New York and New Jersey to dismiss Counts two (2), three (3), four (4), six (6) and the claim for punitive damages contained in plaintiff Richard King's Complaint and for failure to comply with the Tort Claims Act, and the Court having heard oral argument on October 10, 1995, and having considered the submissions of the parties, and for the reasons more fully explained in the **AMENDED LETTER OPINION** filed November 17, 1995, and for good cause having been shown,

**IT IS** on this 29th day of December 1995,

**ORDERED** that defendant's motion to dismiss Counts two (2), three (3), four (4), and six (6) of plaintiff's Complaint is **GRANTED,** and said Counts are hereby **DISMISSED,** and it is further

**ORDERED** that defendant's motion to dismiss plaintiff's claim for punitive damages is **GRANTED,** and said claim is **DISMISSED,** and it is further

**ORDERED** that defendant's motion to dismiss plaintiff's Complaint for lack of sub-

ject matter jurisdiction pursuant to the Tort Claims Act is **DENIED.**